**Terri Lee HALDERMAN, et al., Plaintiffs,**

v.

**PENNHURST STATE SCHOOL AND HOSPITAL, et al., Defendants.**

**Civ. A. No. 74–1345.**

United States District Court, E.D. Pennsylvania.

May 25, 1994.

---

Judy Gran, David Ferleger, Philadelphia, PA, for plaintiffs.

Jerome J. Shestack, Zachary Grayson, Barry M. Klayman, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Commonwealth.

Doris Leisch, Philadelphia, PA, Robert Stern, U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Presently before the Court are petitions for fees and expenses on behalf of attorneys for the plaintiff class in connection with contempt proceedings brought against defendants County of Philadelphia ("County") and Commonwealth of Pennsylvania ("Commonwealth") for their violations of this Court's Order of April 5, 1985 ("Court Decree"). See *Halderman, et al. v. Pennhurst State Sch. & Hosp., et al.,* 610 F.Supp. 1221 (E.D.Pa.1985) ("*Halderman I*") for the terms of the Court Decree. Attorney David Ferleger, who represents *Halderman* plaintiffs, originally petitioned the Court for fees and expenses in the amount of $363,889, but he settled with defendants in the amount of $260,000. The Court approved the settlement agreement between defendants and Ferleger on May 6, 1994. That Agreement calls for the Court to decide the issue of allocation of Ferleger's fees as between the two defendants. Attorneys for Association of Retarded Citizens of Pennsylvania ("ARC"), Judith Gran, Frank J. Laski and Barbara Ransom did not settle their fees with defendants; they seek a total of $554,842.01 in compensation for the period April 7, 1987 through April 27, 1994. Both defendants filed objections to ARC's petition for fees and expenses. Thus, in addition to the issue of allocation, the Court must decide the reasonableness of ARC's attorney fees.

### I.

The fees and expenses of ARC's attorneys were incurred in connection with the contempt motion filed against the County and Commonwealth by the plaintiff class in 1987. The Court Decree called for the defendants to provide community living arrangements, minimally adequate habilitation, and other services to the *Pennhurst* class, who are mentally retarded persons. The contempt proceedings were stayed in August 1991 when the parties entered into an agreement to settle the matter. That agreement called for the parties to work together to develop a plan to "improve the quality and management of the Philadelphia service system for all those [mentally retarded] receiving servic-

es, including, but not limited to, [*Pennhurst*] class members." Settlement Agt., Aug. 15, 1991. This effort became known as the "Community Collaborative." The Community Collaborative was no less than a major effort to restructure the entire mental retardation system within the County of Philadelphia. Unfortunately, after almost two years of meetings and negotiations, the parties were unable to devise a plan that was satisfactory to the plaintiff class. Therefore, in August 1993 the plaintiffs notified the Court that they were unable to reach a satisfactory settlement with the defendants, and they asked the Court to schedule a hearing on their 1987 contempt motion.

The hearing was held over a nine-day period in December 1993. The evidence presented at the hearing overwhelmingly demonstrated that the defendants had engaged in a sustained willful effort to disregard the Court Decree by failing to provide community living arrangements and minimally adequate habilitation to a majority of the class members. *Halderman, et al. v. Pennhurst State Sch. & Hosp.,* 154 F.R.D. 594 (E.D.Pa.1994) ("*Halderman III*"). Accordingly, the Court held both the County and the Commonwealth in contempt and ordered that they both comply with the Court Decree within the times specified in the Order.

### II.

■ ARC plaintiffs now seek compensation for the costs and expenses of prosecuting the contempt motion. Plaintiffs believe that they are entitled to such compensation under two theories. The first is that plaintiffs, as prevailing parties in a civil rights action, have the right to recover attorney fees and costs pursuant to 42 U.S.C. § 1988. Their second theory is that they are entitled to recover such costs under the Court's inherent equitable power to punish contempt. As set forth below, the Court has determined that plaintiffs are entitled to recover their costs of litigating this matter under both theories.

■ Under section 1988, costs assessed must be "reasonable." *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air* (*"Delaware Valley I"*), 478 U.S. 546, 562, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986). The estimate of fees, also known as the lodestar, is calculated by multiplying the number of hours reasonably devoted to the litigation by a reasonable hourly rate for each attorney involved in the case. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *see also Blanchard v. Bergeron,* 489 U.S. 87, 94–95, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989); *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). In *Delaware Valley I,* the United States Supreme Court stated that the resulting figure " '*is presumed* to be the reasonable fee' to which counsel is entitled." *Id.* at 564, 106 S.Ct. at 3098 (citation omitted) (emphasis in original). Further, while the award must be large enough to attract competent counsel, it must not constitute an undue windfall. *Id.* at 565, 106 S.Ct. at 3098 (citations omitted). Consequently, a district court must exclude from the lodestar calculation any hours not "reasonably expended" on the litigation, *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). According to the United States Court of Appeals for the Third Circuit, "[h]ours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Dellarciprete,* 892 F.2d at 1183.

■■■■ The burden of establishing the reasonableness of attorneys' fees falls on the party requesting the fees. *Id.* To meet this burden, the fee petitioner is required to "submit evidence supporting the hours worked and rates claimed." *Id.* (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The burden then shifts to the party opposing the fee to demonstrate that the fee is not reasonable. *Id.* (citing *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989)). The court is not permitted, however, to "decrease a fee award based on factors not raised at all by the adverse party." *Id.* (citations omitted). Once the opposing party has objected, the court has wide discretion to adjust the fees in light of those objections. *Id.* (citation omitted).

In this case, the Court held a hearing on May 6, 1994 for the purpose of hearing objec-tions to the fees and to determine the reasonableness of such fees. The Court's findings and conclusions are as follows.

### A. Reasonable Attorney Hours

Counsel for ARC seek reimbursement against both defendants collectively for the following expenditure of hours:

| | |
|---|---|
| Judy Gran, Esq. | 1993.5 |
| Barbara Ransom, Esq. | 242.0 |
| Frank Laski, Esq. | 192.5 |
| Morgan Harting, Law Clerk | 200.05 |
| Total | 2628.05 |

■■■ On the basis of the record, the Court finds that some modification of the foregoing hours is necessary. First, plaintiffs are only entitled to compensation that is reasonably related to the litigation. *Blum,* 465 U.S. at 888, 104 S.Ct. at 1543. Defendants point out, and plaintiffs concede, that Judy Gran and Frank Laski devoted 356.8 hours (337.7 hours for Ms. Gran and 19.1 for Mr. Laski) to work related to the Community Collaborative. Defendants object to these hours on the basis that most of this work was not reasonably related to the contempt litigation. The Court agrees with the defendants on this point. The Collaborative's goal was to redesign the entire system of governmental delivery of services to the mentally retarded in Philadelphia. That population numbers in the thousands. This class action litigation, however, only pertains to approximately 600 mentally retarded citizens of Philadelphia. While the Court lauds the Collaborative's efforts to streamline the delivery of services to all mentally retarded citizens in the City of Philadelphia, this Court's jurisdiction only extends to the approximately 600 individuals who were certified as members of the plaintiff class. Thus, ARC's counsel expended a large number of hours in search of a remedy that pertained to thousands of individuals who were not the subject of this suit.

Furthermore, several witnesses testified at the hearing that Judy Gran, who incurred the lion's share of the disputed hours, stated to them on several occasions that she was participating in the Collaborative in the capacity of a "civilian" and/or "interested party" and not as an attorney for class members. Ms. Gran's statements are further evi-

dence that the hours spent on work related to the Collaborative were not reasonably related to the contempt litigation.

Plaintiffs' counsel argues, on the other hand, that such time is compensable pursuant to counsels' monitoring efforts. As stated in prior opinions of this Court, "[t]he *Pennhurst* settlement agreement implicitly contemplates that plaintiffs' attorneys will perform monitoring functions." *Halderman v. Pennhurst*, 725 F.Supp. 861, 863 (E.D.Pa. 1989) ("*Halderman II*"). "Moreover, when the decree or settlement assigns various future responsibilities to the parties, compensation for executing its terms is permissible, unless, of course, the compact forbids it." *Id.* (citations omitted). However, even under plaintiffs' monitoring theory, the hours expended must be reasonably related to monitoring *that affects class members.* Therefore, this Court will only award a reasonable amount of hours for monitoring of the settlement agreement and the work of the Community Collaborative as it affected the approximately 600 class members. The Court finds that a reasonable amount of time for such activity would be two hours per month for Ms. Gran for the period during which the settlement agreement was in effect and the Collaborative was functioning. A review of the records indicates that this time period commenced in May 1991 and ended in June 1993. Therefore, for these twenty-four (24) months, counsel Judy Gran shall be entitled to recover for forty-eight (48) hours expended. The hours spent by Mr. Laski were not required for purposes of monitoring of the settlement agreement; therefore, he shall not be awarded any hours for this activity. In sum, as to hours expended on the Community Collaborative, 19.1 hours will be deducted from Mr. Laski's hours and 289.7 hours will be deducted from Ms. Gran's hours in the final award.

▮▮▮ Defendants also object to seventy (70) hours (67.5 hours for Ms. Gran and 2.5 hours for Mr. Laski) for work related to writing press releases, speaking with reporters and otherwise publicizing the contempt motion. This litigation concerns an important public issue, i.e., the habilitation of mentally retarded citizens of Philadelphia. In such a case, the Court is keenly aware of the importance of having counsel provide the media with correct information. Nevertheless, counsel for parties involved in litigation affecting the public interest are entitled only to a reasonable amount of time for such activity. In applying this "reasonableness" standard, the Court finds that Ms. Gran should be compensated for thirty-five (35) hours and Mr. Laski for 1.5 hours of publicity-related work. The Court will deduct the difference of 32.5 hours for Ms. Gran and one (1) hour for Mr. Laski from the final award.

▮▮▮ Similarly, defendants object to 47.3 hours expended by Ms. Gran related to a conflict of interest claim against Commonwealth defendant's counsel. This claim, however, was never asserted in court. Pursuant to section 1988, the court may not award fees for time expended on unsuccessful claims. *Dellarciprete*, 892 F.2d at 1183. The Court therefore will disallow these hours.

▮▮▮ Defendants also object to a total of 52.5 hours (32.7 hours for Ms. Gran and 19.8 hours for Mr. Laski) for which there is inadequate description. Of these 52.5 hours, 5.1 hours (3.4 hours expended by Ms. Gran and 1.7 hours expended by Mr. Laski) do appear to be reasonably related to this litigation in that they involve communications either with clients or the Special Master. Therefore, the Court will disallow the difference of 47.4 hours (29.3 hours for Ms. Gran and 18.1 hours for Mr. Laski).

▮▮▮ Defendants also have asserted a series of objections that the Courts find to be unwarranted. First, defendants object to 18.5 hours spent by Ms. Gran in what defendants' term "casework" activity. Defendants assert that it is impossible to tell from Ms. Gran's petition whether she was acting as an advocate or legal representative with respect to the class members with whom she had contact during these hours. The Court has reviewed the disputed hours and finds that they are reasonably related to monitoring of the Court Decree and/or to bringing the contempt litigation. As stated in prior opinions of this Court, *see, e.g., Halderman II*, 725 F.Supp. at 863, the *Pennhurst* consent decree contemplates that the plaintiffs will un-

dertake monitoring activities to ensure compliance with the settlement agreement. Further, the consent decree provides that the plaintiffs may institute enforcement proceedings if they determine "that any party to this Final Settlement Agreement is failing adequately to discharge its obligations hereunder." *Id.* Inherent within this provision is the authority of plaintiffs to collect and review data necessary to determine compliance with the settlement agreement. *Id.* The hours expended by Ms. Gran in connection with class members are reasonably related to the monitoring authority vested in plaintiffs by the settlement agreement as well as the contempt litigation. There are approximately 600 mentally retarded class members in this case, who reside and/or work in various locations throughout the City of Philadelphia. Each class member's problems are unique, and compliance on the part of the defendants varies with respect to each individual class member. The monitoring and tracking of each of these individuals is a time-consuming and difficult task. Defendants are well aware of this problem inasmuch as this Court found during the contempt proceedings that the defendants have lost track of as many as 176 class members in the past nine years of this litigation. *Halderman III,* 154 F.R.D. at 594–595. The Court will not penalize Ms. Gran for performing her monitoring and tracking functions, particularly where defendants have so egregiously failed to monitor class members in compliance with the Court Decree, *see id.* Accordingly, the Court will allow all of the hours defendants ascribe to "casework."

▇▇▇Defendants also object to thirteen (13) hours (2 hours for Mr. Laski and 11 hours for Ms. Gran) spent interviewing some of the prospective candidates for the position of Special Master who were listed on the Commonwealth defendant's list. The Court views this work was reasonably related to the contempt litigation. The Special Master is responsible for assuring compliance by the defendants with the Court's Order of March 28, 1994. Therefore, counsel for the plaintiffs are entitled to know the qualifications and background of potential candidates for the position. Accordingly, the hours will be included in the final award.

▇▇▇ Defendants challenge an additional twenty-seven (27) hours spent by Ms. Gran accompanying experts on visits to class member sites as unnecessary to the contempt litigation. They argue that support staff or nonprofessionals could have accompanied these experts. The disputed hours involve visits to Embreeville, Allegheny Valley School ("AVS") and various boarding homes where class members reside. It should be noted that the Court previously found that defendants are in profound contempt with respect to class members who are institutionalized at Embreeville and AVS. Under these circumstances, the Court considers the hours spent by Ms. Gran to be reasonable and necessary to the outcome of the contempt litigation. Therefore, the Court will allow all of these hours.

Defendants also request the Court to disallow seventy-seven (77) hours expended by Ms. Gran for time spent on activities that were "duplicative" of her co-counsel, David Ferleger. The Court notes, however, that in large class action suits such as this one, some duplication of effort is inevitable. Moreover, most of the challenged hours were devoted to writing and assembling ARC's findings of fact. The Court carefully reviewed each party's findings at the conclusion of the contempt proceedings. Contrary to defendants' assertion, the Court found both Mr. Ferleger's and Ms. Gran's findings to be non-duplicative and most helpful to the Court. In fact, both Mr. Ferleger and Ms. Gran appear to have made a conscious effort to be non-duplicative in their submittals to the Court. Therefore, the challenged hours will be included in the final award.

▇▇▇ Defendants have also requested that the Court disallow 229.45 attorney and law clerk hours spent with four experts as well as $216.59 in costs. After reviewing the charges for these items, the Court finds that they were reasonably incurred in bringing the action. Although three of these experts were not used at trial, their reports undoubtedly benefitted ARC's attorneys in preparing their case. As noted above, there are approximately 600 class members in this case.

Plaintiffs had to establish contempt as to most of these class members and give the court some basis for awarding the appropriate equitable relief. Accordingly, plaintiffs necessarily were required to spend a substantial amount of time interviewing class members and researching and evaluating their medical and habilitation records. For these reasons, the Court does not consider the time spent with these experts to be unreasonable.

 Finally, defendants argue that the lodestar should be reduced across the board by at least 20% because plaintiffs obtained substantially less relief than they sought. *See Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 (where plaintiff achieves only limited success, court should award only reasonable hours in relation to results achieved). The basic thrust of defendants' argument is that since plaintiffs did not receive any compensatory damages, their lodestar should be reduced. The Court cannot accept defendant's contention for several reasons. First, even the *Hensley* Court acknowledged that a plaintiff who failed to recover damages but received equitable relief was entitled to a full award if the equitable relief obtained warranted the expenditure of hours. *Id.* at 435 n. 11, 103 S.Ct. at 1940–41 n. 11. In this Court's view, plaintiffs achieved substantially all of the relief they requested and to which they were entitled and with the exception of the foregoing adjustments, the relief obtained by the plaintiffs justified the amount of time expended. Furthermore, this Court never determined that plaintiffs were not entitled to compensatory damages. To the contrary, the Court found that while compensatory damages may be warranted, the Court would have difficulty in ascertaining the exact amount of compensation to which each member of the plaintiff class would be entitled. *Halderman III,* 154 F.R.D. at 609. Under these circumstances, the Court concludes that a 20% reduction would be unfair to plaintiffs.

As a result of the foregoing adjustments, the Court finds that reimbursement for the following hours is proper:

| | |
|---|---|
| Judy Gran | 1594.7 |
| Frank Laski | 154.3 |
| Barbara Ransom | 242.0 |
| Morgan Harting | 200.05 |

### B. Hourly Rates

 The second step in computing the lodestar is to calculate the hourly rate at which counsel should be compensated. The hourly rate must be reasonable and is generally "calculated according to the prevailing market rates in the relevant community." *Dellarciprete,* 892 F.2d at 1183 (citing *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)); *Black Grievance Comm. v. Philadelphia Elec. Co.,* 802 F.2d 648, 652 (3d Cir.1986), *vacated on other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754, *remanded,* 825 F.2d 768 (3d Cir.1987); *see also Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989) (hourly rates for attorneys should be based on prevailing market rate). The United States Supreme Court has recognized, however, that "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be case with private billings." *Jenkins,* 491 U.S. at 284, 109 S.Ct. at 2469; *Blum v. Witco Chem. Corp.,* 888 F.2d 975, 980 (3d Cir.1989); *Institutionalized Juveniles v. Secretary of Pub. Welfare,* 758 F.2d 897, 923–24 (3d Cir.1985). Therefore, "an appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise—is within the contemplation of [section 1988]." *Id.* Finally, in determining an attorney's hourly rate, the court should assess the rates of attorneys with comparable skill, experience and reputation. *Dellarciprete,* 892 F.2d at 1183 (citing *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; *Student Pub. Interest Research Group v. AT & T Bell Labs,* 842 F.2d 1436, 1442 n. 3 (3d Cir.1988)).

 Ms. Ransom and Mr. Harting have requested reimbursement for hours commencing in 1993 and 1994 respectively. Ms. Gran and Mr. Laski, however, have submit-

ted statements for hours commencing with the filing of the contempt petition in 1987. With respect to these two attorneys, there has been a substantial delay in payment, *i.e.*, seven years. Therefore, they urge the Court to apply their current, rather than historic, hourly charge to compensate for the delay in payment. Their current hourly rates are $200 and $250, respectively. To account for the long delay, the Court will utilize the attorneys' current market rates as permitted under section 1988, which the Court finds reasonable in light of their extensive experience and expertise in the field of litigation related to the rights of the mentally retarded. This result is fair, given that the seven-year delay was not attributable to any conduct on the part of the attorneys, *see, e.g., Halderman II*, 725 F.Supp. at 867 (delay due to counsel's deficient fee petition); rather the delay was occasioned by the fact that counsel had not received a favorable decision on their contempt motion.

 Defendants have not voiced any objection to the hourly rate of $60 charged by Mr. Harting. With respect to Ms. Ransom, however, the County maintains that the work she performed was not as an attorney but as a computer programmer. Therefore, the County asserts that none of her work should be billed at an attorney rate. Ms. Ransom's hourly rate is $140. At the hearing regarding counsels' fees, Ms. Gran testified that Ms. Ransom is trained as a computer programmer; however, the work she performed in connection with the contempt motion involved decisionmaking as to how to organize the data. According to Ms. Gran, these decisions were more properly made by an attorney, rather than a computer technician. Moreover, the records indicate that Ms. Gran spent very little of her time in computer-related activities. Accordingly, a wholesale reduction of her rate would be unjust. The Court will reduce Ms. Ransom's hourly rate, however, with respect to 9.5 hours spent "typing," which is a clerical activity. For these hours, Ms. Ransom's hourly rate will be reduced to a reasonable hourly clerical rate, $15.

Accordingly, the Court will award fees as follows:

Judy Gran, Esq.
 1594.7 hours at $200/hr. ......... $318,940.00
Frank Laski, Esq.
 154.3 hours at $250/hr. .......... $ 38,575.00
Barbara Ransom, Esq.
 232.5 hours at $140/hr. .......... $ 32,550.00
 9.5 hours at $15/hr. .......... $ 142.50
Morgan Harting
 200.05 hours at $60/hr. .......... $ 12,003.00

### C. Expenses

#### 1. Excess and Unnecessary Copying

 ARC of PA plaintiff's counsel also seeks payment of $62,134.01 in costs. The Court finds that some of these expenses are not reimbursable. First, there is the matter of excess in-office copying. Plaintiff's counsel seeks reimbursement for approximately 107,126 in-office copies for which it charged $.25 per page for a total of $26,779.25. As a result of the hearing and the Court's review of the charges, it is apparent that much of this copying was either unrelated to the litigation and/or excessive. For example, counsel charged $2,167.50 for 8,670 copies made after the Court issued its opinion in the contempt proceedings. At the hearing on fees, ARC's counsel, Ms. Gran, accounted for the charge by testifying that her office made numerous copies of this Court's 70–page opinion for ARC of PA. The Court finds these copies to be excessive and unnecessary. In addition, 7,269 copies were made by counsel during the time period when the settlement agreement was in effect (1991–1993). Most of these copies were unnecessary as there was no litigation activity at that time in connection with the contempt proceeding.

The foregoing are two specific examples of what this Court considers to be unnecessary copy charges. In general, however, the amount of office copying seems to be unreasonably high. By way of comparison, the amount of copies made by ARC's counsel is over three times that of her co-counsel, David Ferleger (35,476), who performed essentially the same amount of work. Accordingly, the Court will reduce the amount of office copies for which ARC may be reimbursed to a total of 40,000. Moreover, ARC's counsel's charge per page for copying ($.25) is unreasonably high. The Court finds that $.20 per page is more than adequate to cover counsel's costs. Therefore, ARC may be re-

imbursed for in-office copying in the amount of $8,000.00. The Court will deduct the difference of $18,779.25 from ARC's final award.

ARC's counsel also seeks reimbursement for out-of-office duplication of thirty-seven (37) copies of their findings of fact. The total charge for the thirty-seven copies was $553.00. The Court finds that twenty-five (25) sets of counsel's findings were unnecessary and will therefore disallow the charge in the amount of $321.25.

### 2. Travel

■ ARC's counsel also seeks reimbursement for travel expenses of Mr. Laski who permanently resides in Boston, Massachusetts but who also acts as a supervisor to Ms. Gran and other attorneys in the Public Interest Law Center of Philadelphia. Specifically, counsel has charged for $481.50 for airfare for Mr. Laski to fly from Boston to Philadelphia during the contempt hearings in December 1993 and $267.00 in airfare for Mr. Laski to attend the hearing to defend his fee petition. Defendants object to these travel charges because they believe they are not a necessary or reasonable expense. They assert that if Mr. Laski chooses to reside in Boston, they should not be forced to pay for his return trips to Philadelphia. The Court is inclined to agree with the defendants in this case. Moreover, there is insufficient documentation as to the necessity of Mr. Laski's travel in December 1993. He did not appear in court during the contempt proceedings, nor is there any indication in counsel's statement that he performed any work in connection with the litigation during this time period. Accordingly, all of these travel expenses appear to be unreasonable to this Court. Therefore, the Court will disallow $748.50 in travel expenses for Mr. Laski.

### 3. Miscellaneous Expenses

■ ARC's counsel also seeks reimbursement for $720.27 in postage, $45.00 in temporary office help, and $861.18 in courier and express mail charges. Defendants argue that the postage and temporary office help charges are normally part of overhead and not billed separately. They maintain that these charges are already reflected in counsel's hourly rate. As to the courier and express mail charges, defendants contend that much of it was not related to the litigation. The Court finds that $17.00 in express mail charges were incurred in connection with work performed for the Community Collaborative and therefore are not litigation-related. This expense will be disallowed. The remaining express mail and courier charges will be included in the final award.

■ As to the charges for temporary clerical help and postage, the Court is aware that under section 1988 some courts do not allow such costs if they are not normally billed separately to fee-paying clients. See, e.g., Laffey v. Northwest Airlines, Inc., 746 F.2d 4, cert. denied, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1984); Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983). The Third Circuit, however, has never decided this issue. Nevertheless, this Court finds that these charges are not necessarily reflected in counsel's hourly rate. Moreover, the charges appear to be reasonable and litigation-related. Therefore, they will be included in the final award.

### 4. Expert Fees and Costs

The last area of disputed expenses concerns ARC's counsels' request for reimbursement of $13,662.73 in expert fees and costs. Plaintiffs retained four experts, all of whom toured class member sites, interviewed class members, researched and evaluated class member records and prepared reports. While all four experts were listed for trial, only one them, Dr. James Conroy, actually presented testimony. Defendants maintain that section 1988 as it existed when the contempt motion was filed in 1987 precluded recovery of expert witness fees and costs. See West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 102, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991) (expert fees and costs not recoverable under section 1988 except that witnesses who testify are entitled to the statutory witness fee of $40.00 per day). Moreover, while the Civil Rights Act of 1991 (the "Act") amended this provision to specifically allow for reimbursement of expert fees, defendants assert that the United States Su-

preme Court has recently held in *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), that the Act does not apply retrospectively. Thus, defendants insist that since plaintiffs' contempt motion was filed in 1987, reimbursement for such expenses would be barred pursuant to *Landgraf.*

■ This Court need not reach defendants' argument regarding *Landgraf* and retroactivity of the Civil Rights Act of 1991, because it is clear that the amended attorney fee statute does not pertain to this action. Section 113(a) of the Civil Rights Act of 1991 amended the attorney fee provision of the Act to specifically provide that expert fees are reimbursable as part of attorney fees in actions "to enforce a provision of section 1981 or 1981a of this title." 42 U.S.C. § 1988(c) (as amended Nov. 21, 1991). The *Pennhurst* complaint, however, was not brought under section 1981; plaintiffs only alleged violations of sections 1983 and 1986. Therefore, the provision contained in section 1988 that provides for an award of expert fees does not reach this action.

■ Nevertheless, the Court has the inherent equitable power in this case to award expert fees. The underlying litigation was a civil contempt action in which the defendants were found to be in deliberate and willful contempt of an order of this Court. Prevailing plaintiffs in contempt actions are entitled to recover the *entire cost* of bringing the contempt action. *Quinter v. Volkswagen of America*, 676 F.2d 969, 975 (3d Cir.1982) (emphasis added); *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (in contempt action, court may fashion award to make plaintiff "whole for expenses caused by his opponent's obstinacy"; award to plaintiff consisting of entire cost of litigation upheld); *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir.1970) ("In a contempt proceeding, the court may, in its discretion award expenses, costs, and fees to the petitioner."). The United States Supreme Court has held that a court's "inherent power" to impose sanctions for contempt is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132. Thus, "if in its informed discretion, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50, 111 S.Ct. at 2136. In this case, the Court finds that whether or not expert fees are recoverable pursuant to section 1988, they are recoverable in this case as a cost of bringing the contempt litigation so long as the expenses were reasonably incurred, *Lichtenstein*, 425 F.2d at 1113; *see also Roberts v. S.S. Kyriakoula D. Lemos, et al.*, 651 F.2d 201, 204 (3d Cir.1981) (court has "equitable discretion to award expert fees where expert's testimony is indispensable to determination of the case").

■ Dr. Conroy testified at trial, and defendants do not dispute that his charges were reasonably incurred. Moreover, the Court finds that Dr. Conroy's testimony was necessary and indispensable to this Court's findings on contempt. Therefore, the Court will allow the plaintiffs reimbursement of all of his expenses in the amount of $9,040.00. The other three experts did not testify, however, the Court finds that their participation also was indispensable to this case. As noted, these experts interviewed class members, researched and evaluated class members' medical and habilitation records and wrote reports that enabled the attorneys to prepare and present their contempt case to the Court. Each of these experts has a specialized background in treatment of the mentally retarded. Their expertise was essential to a coherent presentation of evidence involving the well-being of approximately 600 class members, each of whom has unique medical and habilitative needs that are beyond the ken of an attorney. It would be incongruous for the Court to allow hours spent by the attorneys with these experts, yet disallow fees to these same experts. Therefore, their collective expenses in the amount of $4,622.73 will be included in the final award.

### III.

■ The last issue concerns the proper allocation of fees and expenses between the two defendants. The County requests the

Court to apportion the costs one-half to each party. The Commonwealth, on the other hand, argues that an appropriate allocation would be for the Commonwealth to pay one-third and the County to pay two-thirds based on the relative culpability of the defendants. The essence of the Commonwealth's argument is that it was merely a passive participant in the contempt and that it has only two compliance obligations under the Court's Order. There is only one problem with the Commonwealth's argument—it is factually inaccurate. The Court's March 28 Opinion discusses the Commonwealth's contempt at length and notes that both defendants "have engaged in sustained and deliberate avoidance of their obligations under the Court Decree." *Halderman III,* 154 F.R.D. at 608. Furthermore, the County's funding for mental retardation services is provided almost exclusively by the Commonwealth pursuant to The Mental Health and Mental Retardation Act of 1966, codified at 50 Pa.Cons.Stat. Ann. § 4101 et seq. Yet the Deputy Secretary of the Commonwealth's Department of Mental Health and Retardation admitted in open court during the contempt proceedings that the Commonwealth allocates money to comply with the Court Decree only when threatened with a contempt action. *Id.,* 154 F.R.D. at 604–605. The Commonwealth was more than a mere passive participant. As found by this Court in the contempt proceedings, it was a co-equal partner with the County in contempt of an order of this Court for a period spanning seven years. In recognition of this fact, the Court's Order of March 28, 1994 contains numerous obligations that apply to the Commonwealth, not the least of which is that the Commonwealth shares joint responsibility with the County to provide community living arrangements to between thirty-three and fifty-five class members.

Consistent with its prior opinion in this case, however, the Court will not pause to consider whether to impose joint and several liability on defendants. *See Halderman II,* 725 F.Supp. at 864–65 (Court need not reach issue of joint and several responsibility to allocate fees among defendants). As stated by the Eleventh Circuit,

In addition to having discretion on when to apportion fees, district courts also have wide discretion on *how* to divide liability for fees.... Most simply, in cases with roughly equal wrongdoers in which the court does not want to impose joint and several liability for attorney's fees, the fees can be divided equally among the defendants.

*Id.* (quoting *Council for Periodical Distrib. Ass'ns v. Evans,* 827 F.2d 1483, 1487 (11th Cir.1987)) (citations omitted). In *Halderman II, supra,* the Court was concerned that imposition of joint and several liability might lead to duplicative awards. If so, the Court would be required to mediate disputes concerning overlapping fees, thereby inviting further expenditure of judicial resources. This case presents similar concerns. Therefore, the Court will require that each defendant pay one-half of the entire amount of both Halderman and ARC's fees and expenses as follows:

| Against Commonwealth of Pennsylvania | |
|---|---|
| ARC attorney fees | $201,105.25 |
| ARC allowable expenses | $ 21,134.00 |
| Halderman fees & expenses | $130,000.00 |
| Total | $352,239.25 |
| Against County of Philadelphia | |
| ARC attorney fees | $201,105.25 |
| ARC allowable expenses | $ 21,134.00 |
| Halderman fees & expenses | $130,000.00 |
| Total | $352,239.25 |
| Total Against County and Commonwealth | $704,478.50 |

## ORDER

AND NOW, this 25th day of May, 1994, for the reasons set forth in this Court's Memorandum of May 25th, 1994,

IT IS ORDERED:

1. Defendant County of Philadelphia and Commonwealth of Pennsylvania shall pay fees and costs to *Halderman* plaintiffs' attorney, David Ferleger, in these amounts: Defendant County of Philadelphia: $130,000.00; Defendant Commonwealth of Pennsylvania: $130,000.00;

2. Defendant County of Philadelphia and Commonwealth of Pennsylvania shall pay fees and costs to Association of Retarded Citizens of Pennsylvania plaintiffs' attorneys, Judy Gran, Frank Laski and Barbara Ransom in these amounts: Defendant County of Philadelphia: $222,239.25 Defendant Commonwealth of Pennsylvania: $222,239.25;

3. All payments required to be made pursuant to this Order, shall be made within thirty (30) days of the date of this Order.