**Terri Lee HALDERMAN, et al.**

v.

**PENNHURST STATE SCHOOL & HOSP., et al.**

Civ. A. No. 74–1345.

United States District Court, E.D. Pennsylvania.

Aug. 16, 1995.

David Ferleger, Philadelphia, PA, for plaintiffs.

Jerome J. Shestack and Barry M. Klayman, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for The Commonwealth Defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

"A request for attorney's fees should not result in a second major litigation. Ideally of course, litigants will settle the amount of the fee." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Despite this Court's hope that the parties would heed the Supreme Court's admonition and settle their fee dispute, presently before this Court are the four fee petitions of Plaintiffs Terri Lee Halderman, et al. ("Halderman Plaintiffs") for attorney's fees and expenses from the Commonwealth of Pennsylvania (the "Commonwealth") seeking compensation in the amount of $61,656.00 for attorney David Ferleger's work implementing the Court's March 28, 1994 Contempt Order. The Halderman Plaintiffs seek $14,-388 for the period of May 4, 1994 to August 16, 1994; $14,318 for the period of August 17, 1994 to November 27, 1994; $15,047 for the period of November 23, 1994 to March 2, 1995; and $17,903 for the period of March 2, 1995 to May 9, 1995. The Court will treat these petitions as one request.

Prior to the hearing on the instant fee petitions, held on June 8, 1995, Mr. Ferleger settled his fees and expenses with the County of Philadelphia, and the minimal compensation he seeks from Delaware and Bucks Counties will be addressed by separate order. (Plaintiffs the Arc, Pennsylvania, *et al.* ("Arc") have also petitioned the Court for attorneys' fees and expenses on behalf of Judith A. Gran and Frank Laski of PILCOP for the period of May 4, 1994 to April 30, 1995. The Court is not now considering this request.)

Twice during the pendency of these fee petitions, the Court ordered the Commonwealth to pay Halderman Plaintiffs a sixty per cent interim fee award of $17,223.60 for the period of May 4, 1994 to November 27, 1994 and $9,028.20 for the period of November 23, 1994 to March 2, 1995 (totalling $26,-251.80). The Court made several, unsuccessful attempts to settle this dispute, making its view that fee litigation is a costly and inefficient use of the parties and the Court's time abundantly clear. Finally, it appearing that further efforts between the parties to reach a compromise would be futile, the Court proceeded with a hearing on June 8, 1995. Although the hearing was scheduled before the Halderman Plaintiffs filed their fourth fee petition seeking compensation for the period of March 2, 1995 to May 9, 1995, both parties agreed that it would be most efficient for the Court to consider this request as well.

Mr. Ferleger has incurred the vast majority of his fees and expenses in connection with the implementation of this Court's March 28, 1994 Contempt Order ("Contempt Order"). After a hearing held over nine days in December 1993, this Court found that the evi-

dence overwhelmingly demonstrated that the County of Philadelphia and the Commonwealth had engaged in a sustained and willful effort to disregard the Court's Order of April 5, 1985 ("Court Decree"), (*see Halderman, et al. v. Pennhurst State Sch. & Hosp., et al.*, 610 F.Supp. 1221 (E.D.Pa.1985) for the terms of the Court Decree), by failing to provide community living arrangements and minimally adequate habilitation to a majority of class members. Finding that the defendants' actions demonstrated a clear need for judicial oversight, the Court held both the County and the Commonwealth in contempt and issued an Order intended to make certain that the members of the *Pennhurst* class receive adequate habilitation in community living arrangements as mandated by the Court Decree. *Halderman, et al. v. Pennhurst State Sch. & Hosp.*, 154 F.R.D. 594 (E.D.Pa.1994).

The Commonwealth challenges both the reasonableness of Mr. Ferleger's requested hourly rate of $250.00 and the number of hours for which he seeks compensation. The Commonwealth also objects to some of Mr. Ferleger's expenses as excessive and unjustified.

For the reasons set forth below, the Court has determined that Mr. Ferleger is entitled to an award of $55,008.80 for attorney's fees and expenses for the period of May 4, 1994 to May 9, 1995. The Court will deduct from this award the interim fee of $26,251.80 previously paid by the Commonwealth, leaving a balance of $28,757.00.

## I. DISCUSSION

### A. Calculation of the Lodestar

■ As prevailing parties in this litigation, Halderman Plaintiffs are entitled to an award of attorney's fees and expenses under 42 U.S.C. § 1988, which provides that in federal civil rights actions the "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs", *see Hensley*, 461 U.S. at 426, 103 S.Ct. at 1935, as well as under the Court's "inherent power to reimburse a party for outlays incurred in securing adjudication of contempt." *Halderman et al. v. Pennhurst et al.*, 49 F.3d 939, 941 (3d Cir.1995). A reasonable fee is one that is "adequate to attract competent counsel, but.... [does] not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Indeed, one of the primary purposes of § 1988 is to encourage able attorneys to bring and vigorously litigate civil rights cases when it might not otherwise be financially feasible for them to do so. In enacting § 1988, Congress recognized that fee awards were an "essential remedy if private citizens are to have a meaningful opportunity to vindicate important Congressional policies ..." *See City of Riverside, et al. v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (plurality opinion) (discussing the rationale behind 42 U.S.C. § 1988).

■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. This calculation is generally known as the lodestar. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (Delaware Valley I); *Lindy Bros. Builders, Inc.*, 487 F.2d 161, 168 (3d Cir. 1973) (Lindy I). The Supreme Court has emphasized that the resulting figure is "more than a mere 'rough guess'" of the final award, *Delaware Valley I*, 478 U.S. at 564, 106 S.Ct. at 3098, but is "presumed to be the reasonable fee contemplated by § 1988". *Blum*, 465 U.S. at 896, 104 S.Ct. at 1548.

■ The fee petitioner bears the burden of establishing the reasonableness of the request and is required to "submit evidence supporting the hours worked and rates claimed." *Rode, et al. v. Dellarciprete, et al.*, 892 F.2d 1177, 1183 (3d Cir.1990) (*quoting Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939). The burden then shifts to the party opposing the fee to demonstrate that the fee is not reasonable, and the Court is not permitted to "decrease a fee award based on factors not raised at all by the adverse party." But once the opposing party has objected, the court has wide discretion to adjust the fees in light of those objections. *Id.*

### 1. Number of Hours

■ The first step in calculating the lodestar is to determine the number of hours "reasonably expended" for which an attorney can be compensated. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. Hours are not reasonably expended if they are "excessive, redundant, or otherwise unnecessary," *Rode,* 892 F.2d at 1183, or not reasonably related to the litigation. Halderman Plaintiffs seek reimbursement for the following expenditure of hours against the Commonwealth:

| | |
|---|---:|
| May 4, 1994 to August 16, 1994: | 53.1 |
| August 17, 1994 to November 27, 1994: | 50.6 |
| November 23, 1994 to March 2, 1995: | 47.25 |
| March 2, 1995 to May 9, 1995: | 66.8 |
| Total: | 217.75 |

These hours represent the Commonwealth's share, or just over fifty per cent of the total hours expended. (In the few instances when activities only concerned the Commonwealth, Mr. Ferleger allocated to the Commonwealth 100 per cent of the time expended.) All subsequent references to hourly figures reflect the Commonwealth's share only—i.e. in almost all instances, fifty per cent of the total time expended on the task.

The Court has spent a great deal of time considering the Commonwealth's numerous and detailed objections to the reasonableness of the hours for which Mr. Ferleger seeks compensation. The Court has determined that, with few exceptions, the hours Mr. Ferleger has spent implementing the Court's Contempt Order are reasonable and justified by the gravity of the defendants' contempt and the complexity of the Court's Order.

The Commonwealth objects to the hours Mr. Ferleger spent on activities related to PILCOP's fee application; former Special Master Dr. Gant's fee request; and researching and drafting discovery motions related to his own fee applications. Although the Court finds that Mr. Ferleger is entitled to compensation for this work, and that the hours expended on such tasks were reasonable, as is set forth below, the Court will apply a lower hourly rate to this work as well as to Mr. Ferleger's work on his own fee petitions. The Court finds that Mr. Ferleger spent a total of 39 hours on fee-related tasks.

The Court also finds no basis for the Commonwealth's objections to the hours Mr. Ferleger spent preparing the following documents on behalf of the Halderman Plaintiffs: Motion for a Declaratory Order for Class Definition; Motion for Assessment of Fines for Contempt of ¶ 7 of the Court's March 28, 1994 Contempt Order and for Providing Incorrect Information to the Special Master; Memorandum with supplementary authority in connection with motions for fines and sanctions against defendants; Abuse/Neglect Registry Motion; and its Motion for violation of the Final Settlement Agreement, Order of August 28, 1989, and Order of April 17, 1990. The Court has reviewed these motions and finds that regardless of whether some are still pending or the Court has disposed of them favorably to the defendants, they are all related to this litigation, and are neither excessive, redundant, nor otherwise unnecessary. All were filed to protect legitimate interests of the Halderman Plaintiffs, and none are lacking in legal or factual bases. The Court observes, moreover, that while it hopes and, indeed, urges the parties to avail themselves of the Special Master's unique skills and expertise to reach amicable resolutions of their disputes over compliance with the Contempt Order, the appointment of the Special Master was not intended as a substitute for the parties' right to bring such matters to the Court's attention.

The Commonwealth contends that Mr. Ferleger and PILCOP have expended hours on duplicative tasks and that Mr. Ferleger's fee request should be reduced accordingly. The Commonwealth's concern about unnecessary duplication of effort appears, however, to be without a significant basis in the record. The record suggests, in fact, that Mr. Ferleger and PILCOP make every effort to coordinate their activities.

Mr. Ferleger appears, for example, to be primarily responsible for the filing of motions and pleadings and attending Court-ordered conferences and hearings related to the defendants' compliance with the Court Decree and the Contempt Order. He and the PILCOP attorneys also appear to take primary responsibility for different compliance areas.

With the exception of hours spent in meetings with the Special Master, most of the activities the Commonwealth characterizes as duplicative are insignificant and consist of fractions of hours spent reviewing or analyzing correspondence, orders, comments and reports related to the implementation of the Contempt Order. Counsel for Arc and Halderman Plaintiffs have a responsibility to remain informed about viable issues in this litigation, including those for which they are not directly responsible, through the review of documents and occasional status meetings and phone calls. The Court does not consider such activities to be duplicative.

The most significant area of duplication is the attendance by all parties at regular meetings with the Special Master. As the Court made abundantly clear in its Memorandum and Order of April 18, 1995, it is quite pleased with the progress that has been made toward full implementation of the Contempt Order since the appointment of Tony Records as Special Master on May 12, 1994. The Court is loath, therefore, to interfere with the process the Special Master has set in place.

Ever since his first report to the Court on June 30, 1994, the Special Master has recommended that all parties attend meetings on at least a monthly basis as part of a collaborative process of resolving the many multifaceted compliance issues in this case. He has consistently underscored the importance of such meetings to the achievement of full compliance with the Contempt Order, and there is no question that all counsel should continue to attend these meetings.

There are a few instances where unnecessary duplication appears to have taken place. The Court will disallow the following as duplicative: .3 hours Mr. Ferleger spent drafting a letter to Commonwealth Counsel regarding Northeast Region class members after Judith Gran had already drafted a similar letter; and .15 hours Mr. Ferleger spent drafting a joinder to Arc's motion for contempt regarding the provision of a community living arrangement to a class member.

The Commonwealth also contends that the Court should allocate fees and expenses between the Commonwealth Defendants and the County Defendants in accordance with their obligations under the 1994 Contempt Order, thereby substantially reducing the number of hours in Halderman Plaintiffs' fee petitions for which it would be responsible. This is not the first time the Commonwealth has made this assertion. In 1990, rejecting the Commonwealth's argument that the counties and not the state were responsible for placing mentally retarded individuals in the community, the Third Circuit stated that "[i]t is undisputable that the Commonwealth explicitly agreed in Appendix A [of the Court Decree] to be jointly responsible with the Counties for providing [community living arrangements] to class members as provided for in their individual habilitation plans, as well as community services necessary to provide them with minimally adequate habilitation." *Halderman, et al. v. Pennhurst State Sch. and Hosp.*, 901 F.2d 311, 322 (3d Cir. 1990). The Third Circuit also underscored the Commonwealth's responsibility for monitoring the implementation of Individual Habilitation Plans.

As pointed out above, the Contempt Order flowed from a finding that *both* the County and the Commonwealth proceeded in blatant disregard of the Court Decree and that *both* defendants violated nearly every substantive portion of that Decree. *Halderman, et al.*, 154 F.R.D. at 610. It is abundantly clear that the Contempt Order was intended to remedy the defendants' contempt by making "certain that the members of the *Pennhurst* class receive habilitation in community living arrangements as mandated by the 1985 Court Decree." *Id.* Each and every paragraph of the Contempt Order was drafted to ensure that the defendants fulfill this joint responsibility to the Plaintiffs.

In May, 1994, just following the Contempt Order, this Court soundly rejected the Commonwealth's argument that PILCOP's fees and expenses should be allocated to reflect the County's greater culpability for the contempt. Emphasizing, once again, the Commonwealth's equal culpability, the Court stated:

> The Commonwealth was more than a mere passive participant. As found by this

Court in the contempt proceedings, it was a co-equal partner with the County in contempt of an order of this Court for a period spanning seven years. In recognition of this fact, this Court's Order of March 28, 1994 contains numerous obligations that apply to the Commonwealth . . .

*Halderman, et al. v. Pennhurst Sch. and Hosp., et al.*, 855 F.Supp. 733, 746. Therefore, this Court finds that the Commonwealth is responsible for compensating Halderman Plaintiffs for fifty per cent of the hours expended in connection with the implementation and monitoring of the Contempt Order.

Finally, based on several, minor objections by the Commonwealth, the Court will disallow 1.8 hours as follows: .35 hours Mr. Ferleger spent correcting an error he made to an earlier fee petition and drafting a letter requesting that defense counsel remit payment to him by Federal Express or hand delivery and not by regular mail; .15 hours Mr. Ferleger spent reviewing the New Mexico Professional Judgment Standard because the relevance of this document is unclear; .50 hours Mr. Ferleger included in error; and .8 hours Mr. Ferleger spent drafting a letter to Stephen Miller and researching a potential motion against the defendants pursuant to 28 U.S.C. § 1927 for vexatious increase in the cost of this litigation. This motion was never filed and appears to have been without merit. In summary, based on the foregoing adjustments, the Court concludes that Mr. Ferleger should be reimbursed for 215.50 hours from the Commonwealth, thirty-nine (39) of which were expended on fee related matters.

### 2. Hourly Rate

Determining the hourly rate at which Halderman Plaintiffs' counsel should be compensated is the second step in computing the lodestar. The fee applicant has the burden to establish a reasonable hourly rate. *Rode*, 892 F.2d at 1183. Because the type of services rendered by lawyers, as well as their experience, skill and reputation, varies widely, reasonable fees under § 1988 are calculated according to prevailing market rates for lawyers of "comparable skill, experience, and reputation." *Blum*, 465 U.S. at

895, 104 S.Ct. at 1547 n. 11. Generally, the reasonable value of an attorney's time is reflected in "the price that time normally commands in the marketplace for legal services in which those services are offered." *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985). "A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time— taking account of the attorney's legal reputation and status (partner, associate)." *Lindy I*, 487 F.2d at 167.

Mr. Ferleger seeks a rate of $250/hour. Defendants object to this rate as excessive and above the predominant market rate for like work, and contend that Mr. Ferleger has failed to come forward with evidence that $250.00 per hour is his normal billing rate. The Commonwealth also urges the Court to approve a lower hourly rate for work of marginal legal character such as reviewing documents and litigating fees. For the reasons set forth below, the Court will approve an hourly rate of $250.00 for Mr. Ferleger for all work related to the implementation of the Court's Contempt Order and Court Decree, but the Court will approve an hourly rate of $100.00 for all work related to fees.

First, in approving a rate of $250.00, the Court gives great weight to Mr. Ferleger's twenty-three years of experience in the area of complex systemic litigation on behalf of people with disabilities. The Court takes judicial notice of the fact that over the course of his career, Mr. Ferleger has developed a national reputation in his field. Thirteen years ago, this Court acknowledged Mr. Ferleger's outstanding reputation, stating that he has "become recognized nationally as an outstanding trial counsel in legal actions designed to improve the lives of the handicapped. He has represented the plaintiff class in this litigation since its inception." *Halderman, et al. v. Pennhurst State School and Hospital*, 533 F.Supp. 649, 658 (1982). Mr. Ferleger's reputation in the area of complex systemic litigation on behalf of people with disabilities has only grown since 1982. In 1991, citing Mr. Ferleger's experience, ability and national prominence in the area of mental health law, a court in the Middle District of Alabama, in a case of similar

complexity to *Pennhurst,* awarded him $225.00 per hour, at least $25.00 above the usual market rate. *Wyatt et al. v. King,* 1991 WL 640065 (M.D.Ala., Dec. 17, 1991) at 9, aff'd 985 F.2d 579 (11th Cir.1993) (table). He has been a court-appointed monitor in a federal class action involving a Florida institution for the mentally ill. Mr. Ferleger has made a significant scholarly contribution in the area of the rights of people with disabilities as well, and has taught this subject at the University of Pennsylvania Law School and New York University Law School.

Over the past twenty-one years of the *Pennhurst* litigation, Mr. Ferleger has proven himself to be an able and vigorous advocate on behalf of the *Pennhurst* class. In the last year, Mr. Ferleger has continued to be an effective advocate, bringing to bear the sum total of all of his expertise on what should be the final phase of this case—the monitoring and implementation of the 1994 Contempt Order.

The Court also finds that Mr. Ferleger has produced evidence that his normal billing rate is $250/hour. First, Mr. Ferleger testified that his normal billing rate is $250.00. Second, while the Court recognizes that Mr. Ferleger is most often paid for his work pursuant to fee shifting statutes such that it is difficult for him to demonstrate what clients actually pay him, a retainer agreement shows that $250.00 is currently Mr. Ferleger's normal billing rate. A major impetus, moreover, for enacting § 1988 was a recognition that many victims of civil rights violations do not have the financial resources to employ a lawyer to seek vindication of their rights. *See City of Riverside,* 477 U.S. at 576–577, 106 S.Ct. at 2695.

The record also shows that on May 9, 1994, the Commonwealth paid a lodestar rate of $243/hour, a mere $7 less than the rate he now requests, to settle Mr. Ferleger's fees for the Contempt Trial. In addition, the record shows that the settlement of his current fee petitions reached with the County of Philadelphia is premised on his requested hourly rate of $250.00. Five years ago, in a case challenging the constitutionality of the civil mental health commitment of one individual, Mr. Ferleger sought and was awarded an hourly rate of $225.00. *Lewis v. White, et al.,* 1990 WL 106591 (E.D.Pa.1990). The fact that the defendants in *Lewis* did not challenge this rate supports this Court's view that it was Mr. Ferleger's normal billing rate and a reasonable, market rate for the services he performed. A $25 increase over five years for work on *Pennhurst,* a case that appears to be far more complex than *Lewis,* is not unreasonable.

Finally, Mr. Ferleger has met his burden of showing that 250.00 per hour is commensurate with rates prevailing in the community for similar services by lawyers of comparable skill, experience and reputation. He produced the affidavit of David Rudovsky, Esq., a prominent civil rights attorney specializing in complex civil litigation, who stated that his usual hourly rate in non-contingent cases is $300 per hour and that, in his view, a rate of $250.00 per hour is not only reasonable given Mr. Ferleger's experience and background, but also in line with rates commensurate work commands in the local market as well as nationally. On May 25, 1994, recognizing his extensive experience and expertise in the field of litigation related to the rights of the mentally retarded, this Court awarded Frank Laski, Esq. of PILCOP an hourly rate of $250.00 for his work since 1987 prosecuting the contempt petition in *Pennhurst. Halderman, et al.,* 855 F.Supp. at 742–743. The Court sees no basis for awarding Mr. Ferleger a lower hourly rate than Mr. Laski.

The fee schedule prepared by Community Legal Services, Inc., which was cited with approval by the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 260 n. 70 (3d Cir.1985), suggests a rate between $175.00 and $230.00 for attorneys with more than 10 years experience and a rate between $150.00 and $250.00 for supervising attorneys, project heads, and managing attorneys. The Court finds that this fee schedule supports Mr. Ferleger's requested rate of $250.00 per hour as he is an attorney with not just more than ten but more than twenty years experience in his specialty and has performed a role in the *Pennhurst* litigation that is tantamount to that of a supervising or managing attorney. The 1994 edition

of the Lawyer's Almanac shows that the average billing rate for a "high partner" in Philadelphia, which, given Mr. Ferleger's years of experience and degree of specialization and expertise, is the appropriate category for comparison, is $293.00.

For the foregoing reasons, the Court will apply a uniform rate of $250.00 per hour to Mr. Ferleger's work implementing the 1994 Contempt Order and the 1985 Court Decree. It is the Court's view that Mr. Ferleger brings his unique expertise to each task he performs on behalf of the Halderman Plaintiffs. However, because fee litigation does not fall within the sphere of Mr. Ferleger's special expertise, the Court will apply a rate of $100.00 per hour to all fee-related activities.

## B. Expenses

Halderman Plaintiffs are requesting reimbursement for the following expenses from the Commonwealth:

| | |
|---|---|
| May 4, 1994 to August 16, 1994: | $1,113 |
| August 17, 1994 to November 27, 1994: | $1,668 |
| November 23, 1994 to March 2, 1995: | $3,234 |
| March 3, 1995 to May 9, 1995: | $1,203 |
| TOTAL: | $7,218 |

The Court finds that some of these expenses are not reimbursable.

### 1. Xeroxing Costs

Halderman Plaintiffs seek payment from the Commonwealth of $1,400.90 for their share of the 14,009 in-office copies for which Mr. Ferleger seeks reimbursement at a rate of $.20 per page. The Commonwealth objects to both the rate and the number of copies, but the Court finds both to be reasonable.

### 2. Faxes

 Halderman Plaintiffs seek reimbursement of $734.60 for faxes. The Commonwealth objects to the fax rate of $1.00 Mr. Ferleger used to calculate his charges during the first two quarters of implementation (he subsequently reduced his rate to $.30 per page) as well as to what they perceive to be his excessive use of the fax machine. The Court believes that Mr. Ferleger is entitled to take advantage of late twentieth century technology in running his law practice and need not, as the Commonwealth suggests, conduct a cost benefit analysis of whether it is cheaper to fax or mail each time he wishes to send a letter. The Court will, however, apply the $.30 fax rate retroactively, and will deduct $177.10 from the final award.

### 3. Miscellaneous Expenses

The Court will deduct the following miscellaneous expenses, totalling $57.10, from Halderman Plaintiffs' final award: $5 for a taxi to and from the Courthouse to pick up an opinion; $10 in courier charges for delivering press releases (pursuant to *Halderman, et al.*, 49 F.3d at 942 (disallowing public relations expenses)); and $42.10 for dinners with the County defendants and his expert consultant. However, the Court finds the federal express charges and the expert fees for which Mr. Ferleger seeks reimbursement to be reasonable.

## II. CONCLUSION

For the reasons set forth above, the Court has determined that the Halderman Plaintiffs are entitled to an award of fees and expenses in the amount of $55,008.80 for the period of May 4, 1994 to May 9, 1995. This award reflects a reduction in Halderman Plaintiffs' request for fees from $54,437.50 to $48,025.00 and expenses from $7,218.00 to $6,983.80. Because the Commonwealth has previously paid an interim fee of $26,251.80, the Court will order the Commonwealth to pay the balance of $28,757.00.

## ORDER

**AND NOW,** this 16th day of August, 1995; for the reasons set forth in this Court's Memorandum of August 16, 1995;

IT IS ORDERED: Counsel for Halderman Plaintiffs, David Ferleger, is awarded fees and expenses from Defendant Commonwealth of Pennsylvania for the period of May 4, 1994 to May 9, 1995 in the amount of $55,008.80. Defendant Commonwealth having already paid to David Ferleger an interim fee of $26,251.80 for the period of May 4, 1994 to May 9, 1995, leaving a balance of $28,757.00 for said period, within 30 days of

the date of this Order, the Commonwealth shall pay to David Ferleger the balance of $28,757.00.

IT IS FURTHER ORDERED: The Court having awarded fees and expenses to counsel for Halderman Plaintiffs for the period of May 4, 1994 to May 9, 1995, the following motions are *DISMISSED AS MOOT*: Plaintiffs' Motion to Compel Answers to Interrogatories to Commonwealth Defendants Regarding Hours and Fees; and Defendant's Motion to Compel Answers to the Commonwealth's Interrogatories and Request for Production of Documents to the Halderman Plaintiffs.