

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-2-1995

# Halderman v Pennhurst

Precedential or Non-Precedential:

Docket 94-1674

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Halderman v Pennhurst" (1995). *1995 Decisions.* Paper 66.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/66

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 94-1674
_____

TERRI LEE HALDERMAN, a retarded citizen, by her mother
and guardian, Winifred Halderman, LARRY TAYLOR, a
retarded citizen, by his parents and guardians, Elmer
and Doris Taylor; KENNY TAYLOR, a minor, a retarded
citizen, by his parents and guardians, Elmer and Doris
Taylor; ROBERT SOBETSKY, a minor, a retarded citizen,
by his parents and guardians, Frank and Angela
Sobetsky; THERESA SOBETSKY, a retarded citizen, by her
parents and guardians, Frank and Angela Sobetsky; NANCY
BETH BOWMAN, a retarded citizen, by her parents and
guardians, Mr. and Ms. Horace Bowman; LINDA TAUB, a
retarded citizen, by her parents and guardians, Mr. and
Mrs. Allen Taub; GEORGE SOROTOS, a minor, a retarded
citizen, by his foster parents, William and Marion
Caranfa, all of the above individually and on behalf of
all others similarly situated; THE PARENTS AND FAMILY
ASSOCIATION OF PENNHURST; PENNSYLVANIA ASSOCIATION FOR
RETARDED CITIZENS; JO SUZANNE MOSKOWITZ, a minor, by
her parents and next friends, Leonard and Nancy
Moskowitz; ROBERT HIGHT, a minor, by his parents and
next friends, John and Jeanne Hight; DAVID PREUSCH, a
minor by his parents and next friends, Calvin and
Elizabeth Preusch, and CHARLES DiNOLFI, on behalf of
themselves and all other similarly situated,

<u>Plaintiffs-Intervenors</u>

UNITED STATES OF AMERICA,

<u>Plaintiff-Intervenor</u>

v.

PENNHURST STATE SCHOOL & HOSPITAL; DEPARTMENT OF PUBLIC
WELFARE OF THE COMMONWEALTH OF PENNSYLVANIA; FRANK S.
BEAL, Secretary of the Department of Public Welfare;
STANLEY MEYERS, Deputy Secretary for Mental
Retardation, Department of Public Welfare; HELENE
WOHLGEMUTH, Former Secretary, Department of Public
Welfare; ALDO COLAUTI, Executive Deputy Secretary,
Department of Public Welfare; WILBUR HOBBS, Deputy
Secretary for Southeastern Region, Department of Public

Welfare; G. DUANE YOUNGBERG, Superintendent, Pennhurst State School & Hospital; ROBERT SMILOVITZ, Former Assistant Superintendent Pennhurst State School & Hospital; JOSEPH FOSTER, Assistant Superintendent, Pennhurst State School & Hospital; MARGARET GREEN, BETTY UPHOLD, ALICE BARTON, P.E. KILICK, DR. PAROCCA, HELEN FRANCIS, employees and agents of Pennhurst State School & Hospital; JOHN DOCTOR, JAMES NURSE, JANE AIDE, JILL THERAPIST, RICHARD ROE, JANE DOE, unknown and unnamed staff, employees and agents of Pennhurst State School & Hospital, each individual Defendant sued individually and in his or her official capacity; GEORGE HETZGER, JOSEPH CATANIA, and ROGER BOWERS, Commissioners for Bucks County; ROBERT STREBL, EARL BAKER, and LEO McDERMOTT, Commissioners for Chester County; FAITH R. WHITTLESEY, CHARLES KELLER, and WILLIAM SPINGLER, Commissioners for Delaware County; A. RUSSELL PARKHOUSE, FRANK W. JENKINS and LAWRENCE H. CURRY, Commissioners for Montgomery County; MAYOR FRANK L. RIZZO and THE CITY COUNCIL OF PHILADELPHIA, as Authorities for Philadelphia County; PETER BODENHEIMBER, Mental Health/Mental Retardation Administration for Bucks County; WILLIAM A. McKENDRY, Mental Health/Mental Retardation Administrator for Chester County; P. PAUL BURRICHTER, Mental Health/Mental Retardation Administrator for Delaware County; HERMANN A. ROTHER, Mental Health/Mental Retardation Administration for Montgomery County, and LEON SOFFER, Mental Health/Mental Retardation Administration for Philadelphia County,

Commonwealth of Pennsylvania, Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 74-cv-01345)

Argued December 19, 1994

Before: GREENBERG, SAROKIN and WEIS, Circuit Judges

Filed   March 2, 1995

Jerome J. Shestack, Esquire (ARGUED)
Barry M. Klayman, Esquire
WOLF, BLOCK, SCHORR and SOLIS-COHEN
12th Floor Packard Building
15th & Chestnut Streets
Philadelphia, PA  19102-2678

Attorneys for Appellant, Commonwealth of Pennsylvania

Frank J. Laski, Esquire (ARGUED)
Judith A. Gran, Esquire
PUBLIC INTEREST LAW CENTER OF PHILADELPHIA
125 S. 9th Street, Suite 700
Philadelphia, PA  19107

Attorneys for Appellees

_____

OPINION OF THE COURT
_____


WEIS, Circuit Judge.

In this appeal from the inclusion of specific items in a grant of attorneys' fees and expenses growing out of a contempt proceeding, we hold that no payment is due for time spent in public relations efforts.  Thus, we will disallow those fees as well as those for duplicative work.  Other claims that were not supported by evidence at a hearing on fees or that were improperly inflated because the tasks performed were easily delegable to personnel with substantially lower hourly rates, will also be denied.

In 1985, after years of negotiation, the parties reached a settlement in this suit brought to require appropriate care for mentally retarded citizens in Pennsylvania.  A consent decree was entered, but it was not long before the controversy

erupted again. In 1987, the plaintiff-class filed a motion to have the court hold the City of Philadelphia and the Commonwealth of Pennsylvania in contempt for failing to adhere to the terms of the consent decree. Extended efforts at settlement resulted in an agreement in 1991. However, this attempt also failed to resolve the dispute, and plaintiffs renewed their 1987 motion. After a hearing in 1993, the district court found the City and the Commonwealth in contempt in an opinion reported at Halderman v. Pennhurst State Sch. & Hosp., 154 F.R.D. 594 (E.D. Pa. 1994).

Plaintiffs' counsel then applied for fees and expenses. After some negotiation, David Ferleger, Esquire, who had represented the class, agreed to accept $260,000 and that matter is not at issue. After a hearing, the court awarded fees to the Association of Retarded Citizens of Pennsylvania for the services of its counsel, who had also participated in the proceedings on behalf of plaintiffs. The court directed that the City and the Commonwealth each pay $222,239.25 to cover the Association's attorneys' fees and expenses. Halderman v. Pennhurst State Sch. & Hosp., 855 F. Supp. 733, 746 (E.D. Pa. 1994). Only the Commonwealth has appealed.

An award of fees and expenses in this case is permissible under 42 U.S.C. § 1988 and under the court's inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt. Robin Woods, Inc. v. Woods, 28 F.3d 396, 400-01 (3d Cir. 1994). The formula for awarding fees in the contempt context is usually the more generous. In that setting, the innocent party is entitled to be made whole for the losses it

incurs as the result of the contemnors' violations, including reasonable attorneys' fees and expenses.  Id.; see Chambers v. Nasco, Inc., 501 U.S. 32, 46 (1991); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258 (1975).

The Commonwealth has raised five objections to specific items included in the district court's computations.  We will discuss them seriatim.

### I. PUBLICITY EFFORTS

The Association's counsel sought compensation for seventy hours of "work related to writing press releases, speaking with reporters and otherwise publicizing the contempt motion."  The district court observed that the litigation was over "an important public issue, i.e., the habilitation of mentally retarded citizens" but reduced the requested number of hours to 36.5 as being the maximum amount that the Association could reasonably recover for this activity.  The total amount awarded for publicity efforts was $7,375.00.

In Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169 (4th Cir. 1994), the Court of Appeals rejected a 42 U.S.C. § 1988 claim for fees for public relations efforts "to sway public opinion and influence State policy-makers to change [the defendant's police] enforcement policies."  Id. at 176.  The Court commented that "[t]he legitimate goals of litigation are almost always attained in a courtroom, not in the media."  Id.

In another § 1988 case, Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986), the Court of Appeals for the First Circuit approved the disallowance of time "spent on arrangements for

lectures or publications about the case."  Similarly, in Greater Los Angeles Council on Deafness v. Community Television of S. Cal., 813 F.2d 217, 221 (9th Cir. 1987), the Court of Appeals for the Ninth Circuit concluded that fees for lobbying and publicity claimed under the Rehabilitation Act and the Equal Access to Justice Act were properly disallowed by the trial court.

However, in a Title VII employment case, Davis v. City & County of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993), the same Court of Appeals affirmed an award for counsel's "time spent in giving press conferences and performing other public relations work."  The district court had defended the allowance as a valid effort to obtain the support of elected officials that was vital to obtaining a consent decree.  The Court of Appeals concluded that because private attorneys perform public relations work in connection with their representation of private clients, civil rights attorneys may do so as well.  We find the Davis opinion somewhat inconsistent with the Court's earlier views in Greater Los Angeles Council on Deafness and are not persuaded by its reasoning.

The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees.  We are more impressed with the reasoning in Rum Creek Coal Sales that the proper forum for litigation is the courtroom, not the media. It is particularly inappropriate to allow public relations

expenses in the case at hand while it was pending before the district judge who had approved the consent decree and subsequent settlement agreement. The allowance of $7,375.00 must, therefore, be disapproved.

## II. FEES FOR ESCORTING EXPERTS

The Association submitted a request of $200 per hour for lead counsel's time spent accompanying non-testifying experts on various site visits. In other instances, this function was carried out by a paralegal at $60 per hour. The district court concluded that the hours spent were "reasonable and necessary to the outcome of the contempt litigation."

We have cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable. We cannot condone "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983); Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977).

Even the use of a paralegal for the work described in this claim at $60 per hour appears to be questionable. However, it has not been challenged, and we will not rule on it. In any event, we are persuaded that a disallowance of $3,780.00, as suggested by the Commonwealth, should be granted.

## III. AWARD OF EXPENSES FOR NON-TESTIFYING EXPERTS

The Association submitted a claim for $13,662.73 in fees and costs expended in retaining three non-testifying experts, and $9,040.00 for an additional expert who did testify.

All of the experts purportedly toured class-member sites, interviewed class members, researched and evaluated records, and prepared reports. The district court awarded $9,040.00 for the testifying expert, but allowed only a total of $4,622.73 for the remaining experts, apparently in the belief that the entire claim for experts was $13,662.73. Actually, the total claim for experts, including the one who testified, was $22,702.73.

Approval of the testifying expert's fees in the amount of $9,040.00 has not been challenged on appeal, and the Commonwealth objects only to the claim for the three non-testifying expert witnesses. The district judge found their participation "indispensable to this case" and, relying on equitable powers to remedy the contempt rather than on 42 U.S.C. § 1988, allowed the $4,622.73 collective sum. We agree that granting reimbursement fees of this nature would be proper in a contempt action and, therefore, need not discuss the § 1988 issues.

The difficulty here, however, is the lack of evidentiary support for the district court's ruling on the work of the non-testifying experts. At oral argument, the Association's counsel correctly conceded that there was no support presented at the fee hearing for the necessity of the experts' consultations, nor is there any evidence to account for the services that they performed. Consequently, the award of $4,622.73 for the expenses attributable to those witnesses who did not testify cannot be sustained.

IV.  ATTORNEY CONSULTATION WITH EXPERTS

Similarly, the court approved $40,107.59 for the time that plaintiffs' counsel spent in consulting with those experts, finding that a substantial amount of time was required to interview class members as well as to research and evaluate their medical and habilitation records.  The burden of proof is on the party claiming reimbursement.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  Despite the fact that the Commonwealth had objected to this particular request, the Association never demonstrated why these activities were necessary.  Although an allowance might well have been proper, once again, plaintiffs failed to produce any evidence at the hearing convened to resolve these issues.  Therefore, the Association has not sustained its burden.

We will not grant the Commonwealth's request in full, however, because it appears that it overlaps, to some extent, the $3,780.00 fees for escorting experts discussed in Section II.  We will, therefore, deduct $3,780.00 from the $40,107.59, thereby reducing the disallowance for this item to $36,327.59.


V.   DUPLICATION OF EFFORT

The Commonwealth contends that there was extensive duplication of legal services by the Association's counsel and Mr. Ferleger.  Two specific instances submitted for our consideration are (1) the dual attendance at depositions by the Association's counsel and by Mr. Ferleger, and (2) counsel's

failure to coordinate their work in the extensive preparation of proposed findings of fact, resulting in two separate submissions rather than a single consolidated one.

In many cases, the attendance of additional counsel representing the same interests as the lawyers actually conducting the deposition is wasteful and should not be included in a request for counsel fees from an adversary.  See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The fact that a private client may accede to the practice and pay the additional fees does not necessarily make them reasonable nor necessary when they are to be paid by the other party to the proceedings.  We do not meet the issue here, however, because the Commonwealth did not raise it in the district court.  See Student Pub. Interest Research Group of N.J., Inc. v. AT&T Bell Labs., 842 F.2d 1436, 1454 (3d Cir. 1988).

However, the failure of counsel to coordinate their efforts in the preparation of the findings of fact was challenged, and we therefore will consider it.  The district court found that both sets of requests for findings were non-repetitious and helpful and that it appeared that counsel had made a conscious effort to be non-duplicative.

Mr. Ferleger submitted findings of 132 pages. Principal counsel for the Association testified at the hearing in the district court that she had filed proposed findings of 131 pages as well.  She conceded that "we never discussed filing a single joint proposed findings" and defended the practice of separate submissions throughout the proceedings because different

parties were being represented.  Perhaps there may have been a justification for that procedure during some phases of the litigation, but we are unable to discern the necessity of preparing uncoordinated, separate findings when the interests of those representing the retarded citizens were identical.

We have examined the requests for findings and are convinced that coordination between counsel would have reduced the total time required for preparation.  Redundant review of the record by both counsel and the drafting of parallel requests is wasteful in a situation like this, and some sort of cooperation should have been employed.

We therefore conclude that the Commonwealth's request for a fifty-percent reduction in the 154 hours it asserts the Association's principal counsel spent in preparation of the findings of fact should be granted.  The Association has not questioned the amount of time allocated to that task, and therefore, we accept the Commonwealth's computation.  We thus conclude that the record requires a disallowance in the amount of $15,400.00 for the redundant work in preparing proposed findings of fact.

VI.  ACROSS-THE-BOARD REDUCTION

The Commonwealth contends that the lodestar should have been reduced by 20% across-the-board because plaintiffs obtained substantially less relief than they sought.  The district court disagreed and concluded that "plaintiffs achieved substantially all of the relief they requested and to which they were entitled and with the exception of the [disallowed items], the relief

obtained by the plaintiffs justified the amount of time expended."  On review of objections to specific items in the plaintiffs' fee schedule, the district court reduced the $554,842.01 originally requested by $110,363.51 and permitted a total of $444,478.50.

Because it had conceded in the district court that it was not in compliance with all of the terms of the settlement agreement, the Commonwealth contends that this was not a "risky" case and the only real issue was the scope of the remedy.  We note, however, that the concession was not made until the outset of the hearing -- after the plaintiffs' work was substantially completed.  The trial judge expressed his surprise in responding to defendants' counsel, "You're telling me it was a slam dunk.  I wished I had realized the first day I saw you in this courtroom that this was going to be a slam dunk. . . . [N]obody told me at that juncture that . . . [you were] admitting liability or I would have said:  Fine, the hearing is over."

The reality is that both liability and remedy were contested and that the district court did grant very substantial relief to plaintiffs.  We are not persuaded that the district judge erred in rejecting an across-the-board reduction and, instead, choosing to evaluate specific items in the fee requests.

## VII.  CONCLUSION

Granting the following expenses was inconsistent with a proper exercise of discretion and will be disallowed as listed:

$7,375.00      Publicity

$3,780.00      Escorting Experts

$4,622.73      Non-Testifying Experts' Expenses

$36,327.59     Attorney Consultation with Experts

$15,400.00     Duplication of Services

──────────

$67,505.32     TOTAL REDUCTION OF AWARD

Because the fees were to be evenly divided between the Commonwealth and the City of Philadelphia, the award of counsel fees and expenses against the Commonwealth will be reduced by $33,752.66.

The case will be remanded to the district court for modification of the judgment against the Commonwealth by reducing it to $188,486.59. In all other respects, the judgment of the district court will be affirmed.

_____