**MICROSOFT CORPORATION,**
**Plaintiff,**

v.

**UNITED COMPUTER RESOURCES OF NEW JERSEY, INC., and Sophia Keh and Alfonso Keh, as husband and wife and individually, Defendants.**

**No. CIV.A.96–4860.**

United States District Court,
D. New Jersey.

Aug. 15, 2002.

Richard S. Hyland, Esq., Louis A. Petroni, Esq., James D. Cashel, Esq., Montgomery, McCracken, Walker & Rhoads, LLP, Cherry Hill, NJ, for Microsoft Corporation.

F. Michael Friedman, Esq., Media, PA, for Sophia Keh.

I. Domenic Simeone, Esq., Cherry Hill, NJ, for United Computer Resources of New Jersey, Inc. and Alfonso Keh.

Brian A. Gomez, Esq., Huntley & Associates, Wilmington, DE, for Kehtron Computer, Inc.

## OPINION

ORLOFSKY, District Judge.

In this Application, Plaintiff, Microsoft Corporation ("Microsoft"), seeks attorneys' fees in the amount of $ 252,476.25 and $ 63,064.34 in costs, for prevailing in a contempt action which resulted in an Order directing Defendants to pay $ 158,750.00 in sanctions to Microsoft for their contumacious conduct. Thus, Microsoft seeks to recover almost twice in fees and costs what it recovered against Defendants for violating an Order of this Court. Because I find that much of Microsoft's fee application is the result of duplication of effort, and the overstaffing of its "legal team," I shall reduce the amount of legal fees requested by Microsoft, and order Defendants to pay Microsoft $ 141,745.68 in legal fees and $ 63,064.34 in costs, or a total of $ 204,810.02. This amount more appropriately relates to the relief obtained

by Microsoft, and should serve as a reminder to counsel that having a wealthy client does not justify a legal feeding frenzy resulting in the escalation of attorneys' fees and costs. Excessive legal fees, if not checked by the exercise of billing judgment or, in this case, this Court's inherent powers, will be borne unjustly by someone, be that a losing adversary, a client, or a client's unsuspecting customers or shareholders. The duty imposed by the Rules of Professional Conduct to represent a client zealously does not create a license to write a blank check for excessive legal fees.

## I. BACKGROUND

On December 11, 2001, Microsoft filed an Application for an Order to Show Cause with this Court against Defendants, Alfonso Keh, Sophia Keh, United Computer Resources, Inc., and Kehtron Computer, Inc., (collectively, "Defendants"). Defendants were ordered to appear and show cause why they should not be held in civil contempt for continuing to distribute counterfeit Microsoft software in violation of two permanent injunctions entered against them by this Court. On April 8, 2002, I conducted a one day bench trial to consider the issues raised by Microsoft's Application to hold Defendants in contempt. In an unpublished Opinion and Order, dated May 23, 2002, I found that Microsoft had sustained its burden of proving, by clear and convincing evidence, that Defendants sold two units of counterfeit software and possessed an additional 42 units of counterfeit Microsoft software in violation of this Court's Orders. *Microsoft Corp. v. United Computer Res., Inc.*, Civ. A. No. 96–4860 (D.N.J. May 23, 2002).

I found Microsoft's request for $ 1,750,-000 in sanctions against Defendants to be excessive in light of Defendants' limited infringement. By Order dated May 23, 2002, I directed Defendants to pay $ 8,750.00 in sanctions for their contumacious behavior. I also found that Defendants' violations triggered a Stipulated Judgment which had been entered into by the parties as part of their previous settlement. Accordingly, in my Order of May 23, 2002, I also directed that the Stipulated Judgment for $ 150,000.00 be entered against Defendants. Finally, I determined that Microsoft was entitled to recoup its reasonable attorneys' fees and costs for enforcing the Orders of this Court. Pursuant to my May 23, 2002 Order, Microsoft has now submitted, in accordance with Local Civil Rule 54.2, an affidavit requesting reimbursement in the total amount of $ 315,540.59, which consists of attorneys' fees of $ 252,476.25, and costs of $ 63,-064.34. For the reasons set forth below, I find the amount of legal fees sought by Microsoft to be excessive and unreasonable in several respects, and shall reduce the attorneys' fees which Microsoft is entitled to recover from Defendants to $ 141,-745.68. I shall also award Microsoft costs in the amount of $ 63,064.34.[1]

## II. DISCUSSION

██ The traditional "American rule" disfavors an award of attorneys' fees and costs to the prevailing party in a litigation, absent statutory or contractual authority. *Polonski v. Trump Taj Mahal Assoc.*, 137 F.3d 139, 145 (3d Cir.1998)(citing *Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters and Joiners*, 456 U.S. 717, 721, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982)). In addition to statutory or contractual authority, a court may also award attorneys' fees and costs pursuant to its "inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt." *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir.1995)(citing *Robin Woods Inc. v.*

---

**1.** The costs which Microsoft seeks to recover have not been contested by Defendants.

*Woods,* 28 F.3d 396, 400–01 (3d Cir.1994)); *see also Thompson v. Johnson,* 410 F.Supp. 633, 643 (E.D.Pa.1976)(acknowledging an exception to the "American rule" where the party seeking fees has been compelled to institute litigation from his adversary's misconduct). The fees and costs that may be awarded are limited to those incurred in prosecuting the petition for contempt. *Lichtenstein v. Lichtenstein,* 425 F.2d 1111, 1113–14 (3d Cir.1970); *Apple Corps Ltd., MPL v. Int'l Collectors Soc'y,* 25 F.Supp.2d 480, 484 (D.N.J.1998).

■ An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the "lodestar method." *Apple Corps.,* 25 F.Supp.2d at 484–85. The lodestar calculation involves determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and is presumed to yield a "reasonable fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). A District Court may adjust the lodestar amount downward if the amount is not reasonable in light of the results obtained, *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990)(citing *Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933), but is limited in its discretion to make upward adjustments, because factors such as the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained, are reflected in the lodestar calculation and thus may not be used as independent bases for increasing a fee award upward. *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. 3088; *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■ The party seeking attorneys' fees has the burden of establishing the reasonableness of the fees sought and submitting evidence to support the rates and hours claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In the District of New Jersey, Local Civil Rule 54.2 requires attorneys requesting compensation for services rendered and reimbursement of expenses to file an affidavit with the Court which sets out: (1) the nature of the services rendered, the results obtained, any particular novelty or difficulty involved in the matter; (2) the dates of services; (3) a breakdown of the services rendered, the identity of the person providing the services, the professional experience of that person; (4) the time spent rendering the services; and (5) the normal billing rate for each person providing services. Local Civ. R. 54.2(a).

■ Once the party seeking fees provides such evidence, the burden shifts to its adversary to contest, with sufficient specificity, the reasonableness of the hourly rate or the reasonableness of the hours expended. *Apple Corps.,* 25 F.Supp.2d at 485 (citing *Rode,* 892 F.2d at 1183). If the party opposing the fee application meets its burden, the Court has wide discretion to adjust the attorneys' fee for inadequate documentation, duplication of effort, unreasonableness of hours expended, or lack of relation to the results obtained. *Id.* (citing *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983) and *Rode,* 892 F.2d at 1183). The Court may not, however, adjust the fee for reasons not raised by the objecting party.

■ Microsoft seeks $ 236,433.75 in legal fees for work performed by its local counsel, Montgomery, McCracken, Walker & Rhoads, LLP ("Montgomery McCracken"), and $ 16,042.50 in legal fees [2] per-

---

**2.** In its affidavit, Preston Gates breaks down its fee request into "legal fees" and "paralegal costs." Because paralegals charge hourly rates and assist the lawyers with their legal work, their fees are properly considered part of "legal fees." Indeed, Montgomery

formed by its national counsel, Preston Gates & Ellis, LLP ("Preston Gates").[3] Microsoft also seeks $ 38,551.28 in costs incurred by Montgomery McCracken, $ 106.95 in costs[4] incurred by Preston Gates; $ 3,442.10 in costs incurred by Pinkerton Consulting and Investigations, Inc. ("Pinkerton"), the firm which investigated Defendants' contumacious behavior; $ 18,325.61 in costs incurred by Intellectual Property Services, Inc., the firm which reviewed and analyzed the infringing software found at Defendants' stores; and $ 2,638.40 in costs for the travel expenses which Microsoft employee, Kristi Lamb Bankhead, incurred in connection with her deposition and hearing appearances. Thus, Microsoft seeks to recover attorneys' fees in the amount of $ 252,476.25 and costs of $ 63,064.34, or a total of $ 315,540.59.

Defendants[5] argue that the amount requested by Microsoft is excessive: (1) because the requested fees include work performed on a complaint in a related action;[6] (2) because Montgomery McCracken and Preston Gates performed duplicative work;[7] (3) because the legal fees incurred by Preston Gates for supervising Pinkerton's investigation were unnecessary; (4) because the hours billed on this case were unreasonable given: (a) the simplicity of the issues involved; and, (b) the fact that it was Microsoft's own aggressive litigation strategy that increased its litigation costs; and, (5) in light of the relative financial strength of the parties. In addition, Sophia Keh argues that her relative degree of fault as a passive participant in the underlying infringement should be considered in assessing an award of fees and costs. Finally, Defendants argue that the

McCracken includes its paralegals' fees in its request for legal fees. Thus, I have folded Preston Gates's "paralegal costs" into its request for "legal fees."

**3.** In their initial affidavits, Montgomery McCracken and Preston Gates requested $ 238,321.50 and $ 15,705.50 in legal fees, respectively. These amounts included attorney time spent working on a complaint in a related action. Because counsel for the prevailing party may only recoup attorneys' fees and costs incurred in prosecuting the petition for contempt, *Lichtenstein*, 425 F.2d at 1113–14; *Apple Corps.*, 25 F.Supp.2d at 484, Montgomery McCracken and Preston Gates reduced their initial requests by one-half of the $ 6,292.50 billed for the 28.9 hours attributed to work on both the complaint in the related action and the Order to Show Cause in this action. *See* Pl.'s Reply Br. at 14 & n. 8. The amended affidavit, unhelpfully, did not break down the reduction between the two firms, but the initial amounts allocated approximately 60% of the work to Montgomery McCracken and 40% to Preston Gates. The fee requests for each firm have been reduced accordingly.

**4.** This includes only the $106.95 in "expenses" listed in Preston Gates's affidavit, and

not the $ 1,595.50 in "paralegal costs," as discussed more fully in note 2.

**5.** Defendant, Sophia Keh, filed a response to Microsoft's application for an award of fees and costs, in which Defendants, United Computer Resources of New Jersey, Inc., and Alfonso Keh, joined. Resp. of United Computer Resources of New Jersey, Inc. and Alfonso Keh to Fee Appl. of Microsoft Corp. (July 15, 2002). Defendant, Kehtron Computer, Inc., made no appearance to contest Microsoft's fee application.

**6.** This argument has been acknowledged and corrected by Microsoft, *see supra* note 3, and, therefore, will not be addressed.

**7.** Defendants also argue, somewhat unintelligibly, that Microsoft should not recoup any of Preston Gates' fees or costs because Preston Gates did not appear in the action, and should have sought admission to appear in this Court *pro hac vice*. Microsoft was entitled to transfer this case from its national counsel, Preston Gates, to local counsel, Montgomery McCracken, rather than have national counsel, who are located in California, seek *pro hac vice* admission in this Court.

$ 150,000.00 Stipulated Judgment which was entered in conformity with the 1997 Injunction, *see* Opinion and Order, *Microsoft Corp. v. United Computer Res., Inc.*, Civ. A. No. 96–4860 (D.N.J. May 23, 2002), should be subtracted from whatever fee award is granted.

Before embarking on an analysis of each of the Defendants' arguments, I note that they have not contested the reasonableness of the attorneys' hourly rates, nor any of Microsoft's costs. Accordingly, I will not address either of these components of Microsoft's application.[8]

## A. Duplicative Work

A reduction for duplication of effort " 'is warranted only if the attorneys are unreasonably doing the same work.' " *Rode*, 892 F.2d at 1187 (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir.1988)).

Preston Gates' affidavit summarizes that firm's involvement in this matter as follows:

> Preston Gates' services related to the organization of the evidence obtained from the Pinkerton Investigator (Ms. Dang) and the Microsoft Software Identification Specialist (Ms. Bankhead).
>
> Preston Gates prepared draft motion papers relating to Defendants' contumacious conduct and turned them over to Microsoft's New Jersey counsel, Montgomery, McCracken, Walker & Rhoads, LLP.
>
> As Microsoft's national counsel, Preston Gates consulted with Montgomery, McCracken, Walker & Rhoads, LLP throughout the litigation. However, Microsoft is only seeking reimbursement for Preston Gates' fees incurred before

Montgomery, McCracken was engaged and for work involved in planning for the contempt hearing initially scheduled for January 2, 2002.

Barrett Decl. at ¶¶ 23–25.

The Third Circuit has held that a prevailing party in a contempt proceeding may be reimbursed for reasonable attorneys' fees and costs incurred in demonstrating a contemnor's violations. *Robin Woods*, 28 F.3d at 400–01. Thus, Preston Gates may be reimbursed for fees and expenses related to organizing evidence pertaining to the Defendants' contumacious conduct. It appears from the billing records submitted by Preston Gates and Montgomery McCracken that this work was undertaken before Montgomery McCracken was brought into the case. Accordingly, none of this work was duplicative.

Both firms, however, seek reimbursement for fees incurred for the preparation and drafting of the Order to Show Cause which was filed in this Court, and for preparing for the hearing on the Order to Show Cause. Preston Gates, for example, has numerous entries relating to the drafting and revision of the memorandum of law and declarations filed in support of the application for an Order to Show Cause regarding civil contempt. *See e.g.*, Barrett Decl. Ex. A, at Entry for: 12/4/01 (KM)(3.2 hrs); 12/5/01 (CCH)(5.9 hrs); 12/7/01 (CCH)(1.9 hrs); 12/9/01 (CCH)(4.4 hrs); 12/8/01 (KM)(3.2 hrs); 12/9/01 (CCH)(1.5 hrs); 12/10/01 (CCH)(4.2 hrs); 12/11/01 (JHB)(1.8 hrs); 12/11/01 (JHB)(1.3 hrs). Montgomery McCracken's bills contain entries for "reviewing

---

8. In any case, the rates charged, which range from $ 350 per hour for the services of Mr. Hyland, who is "of counsel" at Montgomery McCracken and a former New Jersey Superior Court Judge, to $ 150 per hour for junior associates at the firm, appear to be consistent with the prevailing market rate in the community for similar work performed by attorneys of comparable skill, experience and reputation. *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541; *Rode*, 892 F.2d at 1183.

and revising contempt brief and related papers" for the same time period. *See e.g.,* Hyland Aff. Ex. A, at Entry for: 12/10/01 (SAF)(4.3 hrs); 12/11/01 (JDC)(4.5 hrs); 12/11/01 (SAF) (9.5 hrs).

Although a certain amount of communication between national and local counsel is essential to bring local counsel "up to speed" before taking over the management of a case, the number of hours expended here by senior partners, Jane H. Barret (JHB), Katherine Marelich (KM), and associates, James D. Cashel (JDC), and Stacy A. Fols (SAF) in the drafting, revising, and reviewing of the same Order to Show Cause and in preparation for the same hearing on that Order to Show Cause is duplicative. Accordingly, each firm's billings for the period ending December 31, 2001 shall be reduced by half. *Cf. Garden State Auto Park Pontiac GMC Truck, Inc. v. Electronic Data Sys. Corp.,* 31 F.Supp.2d 378, 387 (D.N.J.1998)(reduction of fees claimed by half where there was duplication of effort by lead and local counsel). Preston Gates's fees shall be reduced to $7,223.50. Montgomery McCracken's fees through December 31, 2001 shall be reduced to $9,715.88.[9]

## B. Preston Gates's Supervision of Pinkerton

Defendants argue that it was unnecessary for Preston Gates to supervise the investigation into Defendants' contumacious behavior conducted by Pinkerton, because "Pinkertons [sic] knew what to look for, as did Microsoft's in-house legal unit, and did not need Preston, Gates to direct the investigation." Defs.' Br. at 4.

▇▇▇ It is well-settled in the Third Circuit that a prevailing party in a civil contempt matter is entitled to recover costs for investigating, preparing and conducting the contempt proceeding. *Robin Woods,* 28 F.3d at 400. Defendants do not appear to contest this legal principle, but instead, insist that the supervisory and organizational work performed by Preston Gates was duplicative and unnecessary. Such an argument, although creative, is without merit.

Investigation is distinct from the task of organizing the fruits of the investigation for use in a civil contempt proceeding. While it is true that Pinkerton is well-versed in counterfeit software investigations and that Microsoft's in-house paralegal, Kristi Lamb Bankhead, is skilled at determining whether software obtained by Pinkerton is indeed counterfeit software, neither Pinkerton nor Bankhead would be qualified to identify what evidence would be required to sustain a civil contempt action, to target the investigation to obtain such evidence, or to transform the raw data obtained from these investigative pursuits into successful legal argument. These tasks could only have been performed by attorneys. Thus, Preston Gates's oversight of the investigation performed by Pinkerton and Bankhead was necessary. Accordingly, the fees requested by Preston Gates for supervision of the investigation will be allowed.

## C. Unreasonableness of Hours Expended

▇▇▇ Defendants argue that the number of hours billed by Montgomery McCracken to this civil contempt proceeding are excessive and unreasonable because the issues involved in the case were simple and straight-forward, and because it was Microsoft's own aggressive litigation

---

**9.** All of the fees incurred for work on the related matter which Microsoft withdrew from its application, *see supra* note 3, were billed for the period ending December 31, 2001, and thus, these figures represent half of the fees charged by both firms through December 31, 2001, less the amounts attributed to work performed on the related matter.

strategy that increased Montgomery McCracken's billable hours.

Montgomery McCracken staffed this civil contempt proceeding with three partners, whose hourly fees range from $260 to $350; five associates, whose hourly fees range from $140 to $195; and five paralegals, whose hourly fees range from $100 to $130. This team of thirteen performed the following general categories of legal work: (1) preparing and filing the Application for an Order to Show Cause (36 attorney hours; .6 paralegal hours); (2) monitoring the Court-ordered inspection of Defendants' premises (27.6 attorney hours); (3) propounding and responding to expedited written discovery (35.4 attorney hours); (4) propounding and responding to expedited document discovery (53.7 attorney hours; 17.2 paralegal hours); (5) preparing supplemental pleadings (18.5 attorney hours); (6) taking. and defending depositions (154 attorney hours); (7) legal research and writing (184.6 attorney hours); (8) preparing for the contempt hearing (254.7 attorney hours; 54 paralegal hours); (9) hearing appearances (33.3 attorney hours); (10) preparing proposed findings of fact and conclusions of law (125.1 attorney hours); (11) verbal and written communications with Defendants' counsel (88.9 attorney hours; 1.8 paralegal hours); and, (12) communications with Microsoft, Preston Gates, and witnesses. (54.9 attorney hours).

Thus, Microsoft, through Montgomery McCracken, expended an incredible 1066.6 hours of attorney time and 73.6 hours of paralegal time investigating and prosecuting a civil contempt matter against an adversary with whom it was already familiar and who had a fraction of Microsoft's resources, involving legal issues that Microsoft had previously argued and prevailed on in numerous similar proceedings in other courts. *See e.g., Microsoft Corp. v. Tierra Computer, Inc.,* 184 F.Supp.2d 1329 (N.D.Ga.2001)(awarding $1,450,000 in statutory damages for civil contempt); *Microsoft Corp. v. Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950 (N.D.Ill. Jan.22, 2001)(awarding $1,540,000 in statutory damages for trademark and copyright infringement); *Microsoft Corp. v. Compusource Distribs., Inc.,* 115 F.Supp.2d 800 (E.D. Mich. 2000)(awarding $535,000 in statutory damages from trademark and copyright infringement). To say that this represents "overkill" is an understatement.

Microsoft does not appear to argue that the legal issues in the contempt motion were complex or novel. Indeed, it would be difficult for Microsoft to make such an argument, given the fact that it has previously litigated essentially identical cases, and used its prior arguments and judgments extensively in its briefs to the Court. *See* Opinion at 29, *Microsoft v. United Computer Resources,* Civ. A. No. 96–4860 (D.N.J. May 23, 2002).

Instead, Microsoft points the finger at the *Defendants,* claiming that they unreasonably complicated the matter in many ways. First, Microsoft argues that this proceeding was complicated by the fact that there were four defendants, who were represented by six separate law firms, which increased the number of briefs and arguments to which Microsoft needed to respond. Second, it contends that what should have been a relatively simple matter was complicated by Defendants' aggressive defense, which included contesting Microsoft's chain of custody, raising an argument that Microsoft's targeting of them for infringement represented "racial profiling," challenging the qualifications of Microsoft's experts, suggesting that Alfonso Keh might assert his Fifth Amendment privilege against self-incrimination at the hearing, and finally, an eleventh hour revelation that Sophia Keh, did not execute the

prior settlements and stipulations between the Defendants and Microsoft.

It is difficult to fault defense counsel for aggressively defending their clients, who were facing a demand for sanctions in the amount of $1.75 million. Furthermore, although some of Defendants' arguments were creative, none were baseless, and arguments contesting the qualifications of experts and the chain of custody of evidence are somewhat *de rigeur*. Finally, it is presumptuous of Microsoft to argue that the case was complicated by having to respond to four separate defendants when it was Microsoft itself who chose the parties to bring before the Court. Additionally, two of the defendants were corporate entities, for whom the central issue was proving corporate identity and control, issues which Microsoft appears to have investigated in its preliminary investigation. *See* Barrett Decl. Ex. A, at 12/4/01 (KM) entry ("review corporate histories of Kehtron and UCR to determine proper parties for contempt motion").

Montgomery McCracken has divided its fee application into eight categories. I shall address the reasonableness of the request under each category.

### 1. Services relating to the Court-order inspection of Defendants' premises in December 2001.

Microsoft requests 7.6 hours of time for senior associate, Cashel, and 20 hours of time, for junior associate, Bickham, to prepare for and monitor the two-day, Court-ordered inspection of Defendants' premises. By Montgomery McCracken's own account, the presence of counsel at the inspection was little more than a *pro forma* response to the fact that counsel for Defendants were also present at the inspection. *See* Hyland Aff. at 9 ("Because Defendants' counsel represented Defendants at the inspection, a first year associate from Montgomery McCracken accompa-

nied Ms. Rea and monitored the inspection as well."). Accordingly, the high-priced talent of senior associate, Cashel, was unnecessary, and will be disallowed. The twenty hours spent by junior associate, Bickham, monitoring the inspection was reasonable in light of the presence of counsel for Defendants, and, thus, will be allowed. (20 hours @ $140/hour).

### 2. Services relating to legal research and briefs submitted to the Court

Microsoft requests reimbursement for 8 hours of junior associate time (Fitzgerald and Kampf), 100.5 hours of senior associate time (Cashel and Fols), and 78.1 hours of partner time (Epstein and Hyland), for legal research and brief writing.

 It is well-settled in the Third Circuit that "the wasteful use of highly skilled and highly priced talent for matters easily delegable to nonprofessionals or less experienced associates" will not be tolerated. *Ursic*, 719 F.2d at 677. The oft-repeated phrase from *Ursic*—"Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn," *id.*—is apt here. Furthermore, "[a] fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law." *Id.*

Defendants should not be asked to pay for Montgomery McCracken's decision to assign the routine tasks of research and drafting to partners of the firm. Accordingly, all of the time spent on such tasks by Mr. Epstein and Mr. Hyland will be disallowed. Furthermore, 100.5 hours expended on researching and drafting briefs on a routine contempt motion with no novel issues, is excessive for two senior associates such as Mr. Cashel and Ms. Fols,

who, to put it gently, should have been more efficient. "Normally, the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task." *Rainey v. Philadelphia Hous. Auth.*, 832 F.Supp. 127, 130 (E.D.Pa.1993). Accordingly, Mr. Cashel's and Ms. Fol's time will be reduced by half (46.6 hours @ $185/hour (Cashel); 3.7 hours @ $200/hour (Fols)).

Finally, the combined hours spent by junior associates on these tasks appears reasonable and will be allowed. (6 hours @ $150/hour).

### 3. Services related to preparation for, appearance at, and follow-up on the April 8, 2002 hearing

Partners Epstein and Hyland spent 137.3 hours preparing for the eight-hour contempt hearing,[10] and an additional 24.1 hours for the contempt hearing itself. This time is in addition to the 117.4 hours, senior associate, Mr. Cashel spent in preparing for the hearing, and the 9.2 hours Mr. Cashel expended on the contempt hearing itself. Both Mr. Epstein and Mr. Hyland participated in the hearing, splitting the examinations and cross-examinations roughly in half. Mr. Cashel did not actively participate in the hearing itself.

Microsoft defends this extraordinary fee request because it was required to prepare for a hearing that was originally scheduled for January 2, 2002, but which was delayed due to a request from Defendants for time to take additional discovery.

 It is unreasonable for *two* high-priced partners to expend roughly seventeen times as long to prepare for a hearing

as to attend it. *Apple Corps.*, 25 F.Supp.2d at 491 (finding a senior attorney's billing for three times the hours spent in preparation for a hearing as for the hearing itself excessive and reducing those hours by half)(citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1039 (3d Cir.1996)). Furthermore, "the attendance of additional counsel representing the same interests as the attorney actually participating in a hearing 'is wasteful and should not be included in a request for counsel fees from an adversary.'" *Apple Corps.*, 25 F.Supp.2d at 489 (quoting *Halderman*, 49 F.3d at 943).

Even taking into account the duplication of effort required in preparing for the rescheduled hearing on January 2, 2002, the hours requested by Microsoft are more than excessive. Accordingly, each attorney, Mr. Cashel, Mr. Epstein and Mr. Hyland, will be allowed only twenty-four hours [11] for preparing for the hearing. (24 hours @ $195/hour (Cashel); 24 hours @ $245/hour (Epstein); 24 hours @ $350/hour (Hyland)). Only those attorneys, Mr. Epstein and Mr. Hyland, who actually participated in the hearing will be reimbursed for their time. Additionally, the hours billed by Mr. Epstein and Mr. Hyland for attendance at the hearing will be reduced to the duration of the hearing, which I will generously round up to a normal work day of eight hours, although the actual duration of the hearing was closer to six or seven hours.[12] (8 hours @ $245/hour (Epstein); 8 hours @ $350/hour (Hyland)).

In addition, Microsoft has requested reimbursement for 54 hours of paralegal time spent in preparation for the contempt

---

10. I am generously assuming that the hearing lasted a full day, although, the actual length was nearer to six or seven hours.

11. This allows for eight hours of preparation time for the originally scheduled hearing on

January 2, 2002, and an additional sixteen hours, or twice the length of the hearing itself, of preparation time for the actual hearing, held on April 8, 2002.

12. *See supra*, note 10.

hearing. While expenses incurred for paralegal costs are recoverable, *Missouri v. Jenkins*, 491 U.S. 274, 289, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), for the reasons set forth above in connection with the attorneys' fees, 54 hours in paralegal time spent preparing for an eight-hour hearing is excessive. Accordingly, the paralegal's time will be reduced to the same twenty-four hours as the attorneys. (24 hours @ $115/hour (Kenny)).

### 4. Services related to preparing Microsoft's proposed findings of fact and conclusions of law and reply brief

Microsoft requests 56.6 hours of partner time (Epstein and Hyland) and 68.5 hours of senior associate time (Cashel and Fols), for the preparation of Microsoft's proposed findings of fact and conclusions of law.

These proposed findings of fact and conclusions of law were requested by the Court, and are thus, recoverable, *see Apple Corps.*, 25 F.Supp.2d at 488, however, for the reasons set forth in Part C.2. above, these hours are excessive. Accordingly, only ten hours of one partner's time, Mr. Epstein, will be allowed as the reasonable number of hours necessary to supervise the work of the senior associates who drafted the proposed findings of fact and conclusions of law (10 hours @ $245/hour). The time spent by senior associates Cashel and Fols will be reduced by half in accordance with the principles of law set forth in Part C.2. above. (24.54 hours @ $195/hour (Cashel); 8.6 hours @ $200/hour (Fols)).

### 5. Services related to propounding and responding to expedited written and document discovery

With regard to fees expended on expedited discovery for the contempt hearing, Microsoft requests 30 hours of partner time (Epstein and Hyland); 42.8 hours of time for senior associate time (Cashel), and 17.2 hours spent by paralegals in "monitoring the several inspections Defendants performed of the counterfeit software and genuine exemplars at the office of Montgomery McCracken."

■■■ Having two high-priced partners oversee a routine task such as discovery is unnecessary. Accordingly, Mr. Hyland's time billed to discovery will be disallowed, and Mr. Epstein's time will be reduced to one hour (1 hour @ $245/hour).

Propounding one set of requests for admissions, one set of interrogatories, one set of a request for production for documents, and responding to one set of requests for admissions, three sets of interrogatories, and four requests for production of documents reasonably could consume 17.9 hours of senior associate time. Therefore, these hours billed by Mr. Cashel will be allowed. (17.9 hours @ $185/hour). Reviewing and analyzing "thousands of pages of documents produced by Defendants," however, should not have taken a senior associate of Mr. Cashel's experience and qualifications 41.2 hours to complete. Accordingly, the hours he spent on these tasks will be reduced by half (20.6 hours @ $185/hour).

Finally, billing time for three paralegals to act essentially as "guards" over the Defendants while they inspected Microsoft's evidence, *see* Hyland Aff. at 10 ("The paralegal time incurred was primarily related to monitoring the several inspections Defendants performed of the counterfeit software and genuine exemplars at the office of Montgomery McCracken.") is excessive. Microsoft will be allowed to recoup the 7.7 hours billed by one paralegal, Ms. Wehbe for this task (7.7 hours @ $110); the remainder will be deducted from Microsoft's requested costs.

## 6. Services relating to additional or supplemental pleadings

Microsoft requests reimbursement for 15.2 hours of Mr. Cashel's time, and 3.3 hours of Mr. Epstein's time spent negotiating with opposing counsel about the filing of a Stipulated Protective Order, filing miscellaneous notices of lodging of copyrights and trademarks and, preparing the motion to strike a certificate submitted by opposing counsel.

These pleadings did not involve complex or novel legal issues. The notices of lodging of copyrights and trademarks contained information taken verbatim from previous documents filed with the Court. The motion to strike the Certification of opposing counsel for failure to adhere to Local Civil Rule 7.2, was excessive, indeed it verged on being vexatious. The Court is intimately familiar with the legal principles involved and the issue could have been addressed in one sentence at oral argument. None of these supplemental pleadings required the attention of a partner, thus, none of Mr. Epstein's time will be reimbursed. Furthermore, because none of these pleadings were difficult and the one to strike counsel's certification was gratuitous, Mr. Cashel's time will be reduced to 10 hours. (10 hours @ $195/hour).

## 7. Services relating to taking and defending depositions

 Microsoft requests 86.1 hours of Mr. Cashel's time for taking the deposition of Alfonso Keh and Kehtron's designated corporate officer, pursuant to Fed.R.Civ.P. 30(b)(6), and for defending the depositions of Ateck and Dang; 55.5 hours of Mr. Epstein's time for defending the depositions of Kristi Bankhead and Anita Rea, as well as for preparing these witnesses; and 12.4 hours of Mr. Hyland's time for preparing those same witnesses.

Assigning two partners to prepare the same witnesses for deposition approaches the definition of "chutzpah." [13] Accordingly, Mr. Hyland's time will be disallowed. It does not appear unreasonable to assign a partner and senior associate to take and defend depositions which provided the basis of the evidence introduced at the contempt hearing. Accordingly, the fees requested for Mr. Cashel's and Mr. Epstein's services in this regard will be allowed. (86.1 hours @ $185/hour (Cashel); 55.5 hours @ $245/hour (Epstein)).

## 8. Services relating to various written and verbal communications with counsel for the parties and the Court, Preston Gates, Microsoft and witnesses

Microsoft has requested reimbursement for 143.9 hours of attorney time spent in communication with opposing counsel, the Court, Microsoft, Preston Gates, and Microsoft's witnesses. In addition, Microsoft requests 1.8 hours of paralegal time for communication with the Court.

Conferences among co-counsel and between counsel and client are necessary to

---

**13.** I follow the lead of Justice Scalia and Judge Sporkin, of the United States District Court for the District of Columbia, in choosing this Yiddish word to describe the avaricious generation of legal fees, unfiltered by the exercise of "billing judgment." *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 597, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998); *Engel Indus., Inc. v. First Am. Bank, N.A.*, 798 F.Supp. 9, n. 7 (D.D.C.1992); *see also* Jack Achiezer Guggenheim, *The Evolu-*tion of Chutzpah as a Legal Term, 87 Ky. L.J. 417 (1999), *also available* at *http:// www. jlaw.com/Commentary/SupremeChutzpah. html* (last visited on Aug. 15, 2002).

Chutzpah is defined as "gall, brazen nerve, effrontery, incredible 'guts,' presumption-plus-arrogance such as no other word, and no other language, can do justice to." *Engel*, 798 F.Supp. at n. 7 (quoting Leo Rosten, *The Joys of Yiddish* 93 (1968)).

coordinate strategy and often result in a net savings of time due to greater efficiency. *Apple Corps.*, 25 F.Supp.2d at 488. Conferences requested by the Court are mandatory for counsel, and communication with Court personnel is essential to keeping the Court appraised of the Parties' progress, and ensure efficiency in proceedings before the Court. Accordingly, these hours will be allowed. (50.1 hours @ $185/hour (Cashel); 63.2 hours @ $245/hour (Epstein); 24.5 hours @ $ 350/hour (Hyland); 3.9 hours @ $200/hour (Fols); 2.1 hours @ $ 325/hour (Petroni); 1.8 hours @ $130/hour (Schwartz)).

### D. Consideration of Relative Financial Strength of Parties

Defendants argue that the Court consider the relative financial strength of Microsoft and the individual Defendants in ascertaining the size of an attorneys' fee award. The relative financial strength of the parties is one of several relevant factors in determining the appropriate fee award under the Copyright Act. 17 U.S.C. § 505; *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986).

I note that because this matter was instituted to punish the Defendants for violating an Order of this Court, the authority to award attorneys' fees flows from the Court's inherent powers, *Halderman*, 49 F.3d at 941, rather than the statutory authority of the Copyright Act. The Court Order which the Defendants violated, however, directed the Defendants to cease their infringement of Microsoft's copyrights. Thus, because the Court Order was in place to carry out the purpose of the Copyright Act, it is proper to consider the factors contained in that Act, in assessing the appropriateness of an award of attorneys' fees under the Act.

While as a practical matter, it is fairly obvious that Microsoft is in comparatively stronger financial health than Defendants, who own, or used to own, two local computer stores, a more exacting comparison is impossible given the dearth of evidence before me as to the net worth of either party. *See* Def.'s Br. at 8–9 ("In some cases it might be useful to provide the Court with an affidavit from defendant Sophia Keh as to her assets but, the difficulty counsel has in communicating with his client, given her limited command of the English language, has made that impractical."). In any case, I believe that the reductions that I have already made to Microsoft's fee request based on duplication of effort, unnecessary effort, and overstaffing, have obviated the need for a detailed consideration of this factor.

### E. Sophia Keh's Relative Liability

█ The Court found Sophia Keh liable for the contumacious behavior of Defendants because she was an officer of the Defendant companies, and had authorized her husband, Alfonso Keh, to act as her agent with regard to all matters relating to those companies. Opinion at 19–20, *Microsoft Corp. v. United Computer Resources, Inc.*, Civ. A. No. 96–4860 (D.N.J. May 23, 2002). Thus, Sophia Keh was jointly and severally liable for the damage to Microsoft. Sophia Keh's relatively "passive" involvement therefore, was a consideration in a finding of contempt, but has no relevance to the Court's determination of a reasonable award of fees and costs. The Court would be overreaching to dictate in what denomination and against which co-Defendants Microsoft is entitled to collect its award. Accordingly, a consideration of Sophia Keh's relative liability is irrelevant to this application.

### F. Application of Stipulated Judgment toward Attorneys' Fees Award

█ Defendants argue that they should receive "credit" for the $ 150,000

Stipulated Judgment toward any award of attorneys' fees and costs. The Stipulated Judgment expressly states that it represents "the amount of damages to have been sustained by Microsoft on or before the date of execution of [the Stipulated Judgment]." Opinion at 8, *Microsoft Corp. v. United Computer Resources, Inc.*, Civ. A. No. 96–4860 (D.N.J. May 23, 2002)(citing Pl.'s Ex. 6, ¶ 2). The Stipulated Judgment represents sums for *past* damage suffered by Microsoft, which had been, in essence, "waived" in light of the Settlement Agreement with the Defendants. An award of attorneys' fees and costs is designed to reimburse Microsoft for fees and costs incurred in enforcing an Order of this Court, which Defendants violated through infringing acts committed *after* the Stipulated Judgment was entered into by the parties. The two are distinct remedies. Therefore, to subtract the $ 150,000 from Microsoft's award of attorneys' fees and costs would deprive it of the "benefit of the bargain" that it negotiated under the Stipulated Judgment.

## III. CONCLUSION

For the reasons set forth above, I conclude that Microsoft shall be reimbursed by Defendants for the following amounts of attorneys' fees and costs:

**Preston Gates**

| | | |
|---|---|---|
| Legal fees | $ | 8,819.00 [14] |
| Costs | $ | 106.95 |
| Total | $ | 8,925.95 |

**Montgomery McCracken**
Legal Fees:

| | | |
|---|---|---|
| Work through Dec. 31, 2001 | $ | 9,715.88 |
| Court-ordered inspection | $ | 2,800.00 |
| Research/Writing | $ | 10,261.00 |
| Hearing Preparation | $ | 21,720.00 |
| Hearing Appearances | $ | 4,760.00 |
| Findings of Fact/ Conclusions Of Law preparation | $ | 8,955.30 |
| Discovery | $ | 8,214.50 |
| Supplemental Pleadings | $ | 1,950.00 |
| Depositions | $ | 29,526.00 |
| Communications | $ | 35,024.00 |
| Total Legal Fees | $ | 132,926.68 |

14. See supra, note 2.

**Costs:**

| | | |
|---|---|---|
| Montgomery McCracken | $ | 38,551.28 |
| Pinkerton | $ | 3,442.10 |
| Intellectual Property Svcs. | $ | 18,325.61 |
| Travel Expenses | $ | 2,638.40 |
| Total Costs | $ | 62,957.39 |

**Attorneys' Fees:**

| | | |
|---|---|---|
| Preston Gates: | $ | 8,819.00 |
| Montgomery McCracken: | $ | 132,926.68 |
| Total Fees: | $ | 141,745.68 |

**Costs:**

| | | |
|---|---|---|
| Preston Gates: | $ | 106.95 |
| Montgomery McCracken: | $ | 62,957.39 |
| Total Costs: | $ | 63,064.34 |

| | | |
|---|---|---|
| **Total Attorneys' Fees and Costs Award:** | $ | 204,810.02 |

The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the application of Plaintiff, Microsoft Corporation, for an award of attorneys' fees and costs, Richard S. Hyland, Esq., Louis A. Petroni, Esq. James D. Cashel, Esq., Montgomery, McCracken, Walker & Rhoads, LLP, representing Plaintiff, Microsoft Corporation; F. Michael Friedman, Esq., appearing on behalf of Defendant, Sophia Keh; I. Domenic Simeone, Esq., appearing on behalf of Defendants, United Computer Resources of New Jersey, Inc. and Alfonso Keh; and,

The Court having considered the submissions of the parties;

For the reasons set forth in the Opinion filed concurrently with this Order;

IT IS, on this 15th day of August, 2002, hereby ORDERED that Plaintiff is awarded $ 141,745.68 in attorneys' fees and costs

of $ 63,064.34, which shall be payable by Defendants.